DIRELCO, INC., Appellant,

v.

Bob BULLOCK, Comptroller of Public Accounts, et al., Appellees.

No. 14483.

Court of Appeals of Texas, Austin.

May 14, 1986.

Rehearing Denied June 18, 1986.

Richard F. Craig, Roan & Gullahorn, Austin, for appellant.

Jim Mattox, Atty. Gen., F.W. Chip Holt, Jr., Asst. Atty. Gen., Austin, for appellees.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

CARROLL, Justice.

Direlco, Inc. sued to recover taxes assessed and paid under protest pursuant to the Limited Sales, Excise and Use Tax Act, Tex.Tax.-Gen.Ann. arts. 20.01–20.17 (1969 & Supp.1982) now codified at Tex.Tax Code Ann. §§ 151.001–151.801 (1982 & Supp. 1986). After a bench trial, the district court denied recovery and entered judgment for appellees, the Comptroller, the Treasurer and the Attorney General for the State of Texas (hereafter the Comptroller). We will affirm the judgment of the district court.

Direlco owns four buildings in Dallas and leases space in them for offices and retail use. In addition to maintenance and security services for its tenants, Direlco also provides the gas and electricity used in the buildings.

The Comptroller audited Direlco for the period from April 1977 through December 1980, and assessed a $78,629.54 deficiency for unpaid sales and use tax on Direlco's purchase of gas and electricity for the four buildings. Direlco had taken the position that its purchase of gas and electricity for the four buildings was not a "commercial use" and was therefore exempt from tax imposed by the Act under art. 20.04(R).[1]

---

1. (R) Gas and Electricity.

(1) There are exempted from the taxes imposed by this Chapter, but not from the taxes imposed by a city under the Local Sales and Use Tax Act, the sale, production, distribution, lease or rental of and the storage, use or other consumption in this State of gas and electricity except when sold for commercial use.

(2) There are exempted from the taxes imposed by a city under the Local Sales and Use Tax Act the sale, production, distribution, lease or rental of and the storage, use or other consumption in this State of gas and electricity except when sold for residential use or commercial use, unless sales for residential use are further exempted by the city as provided in the Local Sales and Use Tax Act.

(3) For the purpose of this subsection, the terms 'residential use' and 'commercial use' shall have the following meanings:

Briefly summarized for purposes of this appeal, the statute exempts from tax the purchase and use of gas and electricity except for gas and electricity sold for "commercial use" or "residential use" as those terms are defined. In addition, four industrial activities are excluded from the definition of "commercial use" and are consequently entitled to the exemption.

■ The focus of Direlco's argument concerns the use of the words "commodity" and "service" in the definition of "commercial use." Although neither word is defined in the statute, they seemingly describe the range of "commercial use" excluded from the exemption. As a general proposition, when a statute fails to define a term, the court must begin with the assumption that the legislative purpose is expressed by the ordinary meanings of the words used. *Calvert v. British-American Oil Producing Co.*, 397 S.W.2d 839 (Tex. 1965).

Direlco contends that the leasing of commercial office space is neither a "commodity" nor a "service" if these words are given their ordinary meanings. As a consequence, the leasing of commercial real estate would not be a "commercial use" as defined in the statute, and Direlco would be entitled to the exemption provided by art. 20.04(R). If "commodity" is defined in a commercial sense, it refers to moveable or tangible items that are produced and sold. Under such a definition, commercial leasing property is not a "commodity." Direlco also maintains that the qualification of "service" in the statute by the phrase "professional or personal" demonstrates that the Legislature did not intend for all services to be taxed. Simply put, Direlco argues that the words "professional" and "personal" do not describe all of the services available in commerce.

Beginning with the premise that the statute does not include all services, Direlco argues that commercial leasing is neither a professional nor a personal service. According to this argument, *professional service* refers to a vocation, calling or occupation involving special knowledge or skill, that a commercial leasing corporation cannot perform, while *personal service* indicates that acts were done for the benefit of another by a particular individual. *See Mathews Construction Co., Inc. v. Jasper Housing Const. Co.*, 528 S.W.2d 323 (Tex. Civ.App.1975, writ ref'd n.r.e.) and *Maryland Casualty Co. v. Crazy Water Co.*, 160 S.W.2d 102 (Tex.Civ.App.1942, no writ). Direlco concludes that as a corporation, it cannot perform a professional service or personal service.

The Comptroller first responds that Direlco has not assigned the appropriate meanings to "commodity" and "service." The ordinary meaning of "commodity" includes anything useful or valuable. *See* Webster's New Collegiate Dict., 224 (8th ed. 1979). Direlco's buildings are useful and valuable, and are therefore commodities. Under its broadest definition, "service" means the administering or supplying of a need to others, which would include the leasing of commercial property. The Comptroller alternatively argues that the meaning of "commercial use" is doubtful or subject to two or more reasonable constructions. As a result, art. 20.04(R)(3) is

---

Residential use means use in a family dwelling or in a multi-family apartment or housing complex or building or portion thereof occupied as a home or residence.

*Commercial use means use by persons engaged in selling, warehousing or distributing a commodity or service, either professional or personal.*

The term 'commercial use' specifically does not include use by persons engaged in: (1) processing tangible personal property for sale as tangible personal property; (2) exploration for or production and transportation of a material extracted from the earth; (3) agriculture, including dairy or poultry operations and pumping water for farm and ranch irrigation; or, (4) electrical processes such as electroplating, electrolysis and cathodic protection.

Tex.Tax.-Gen.Ann. art. 20.04(R) (Supp.1982) (emphasis added). Now codified at Tex. Tax Code Ann. § 151.317 (1982). We have set out the 1978 amended version of the statute which became effective during the audit period. Nonetheless, we find that the changes in the statute following the 1978 amendments have no bearing upon this appeal. The focus of the appeal is on the definition of "commercial use," which has not changed since 1963.

ambiguous and the Comptroller's construction of the statute should be followed. *Calvert v. Kadane,* 427 S.W.2d 605 (Tex. 1968).

It is uncertain from the statute as a whole whether the Legislature intended to *include* all areas of commerce in its definition of "commercial use." Stated in the converse, it is not clear from the definition whether the Legislature intended to *preclude* all areas of commerce from enjoying this exemption, besides those industries specifically excluded from the definition: agriculture, manufacturing, mining, and electroplating. The ordinary meanings of "commodity" and "service" can reasonably encompass both of the conflicting definitions that the parties have assigned to them. Although we have been unable to determine a specific area of commerce that clearly would not fall within the definition of "commercial use," and so might be entitled to the exemption, it is not unreasonable to assume that one might exist.

In light of this uncertainty, we have concluded that the definition of "commercial use" is subject to two or more reasonable interpretations, and is therefore unclear and ambiguous. It may be reasonable to say, as Direlco claims, that "commodity" and "service" *do not encompass* all areas of commerce, and specifically do not include the leasing of commercial real estate. Nonetheless, if we attach the broadest possible meanings to "commodity" and "service," it is also possible to find that "commercial use" *includes* all areas of commerce not specifically excluded by the statute.

There are established principles that guide our effort to interpret art. 20.-04(R)(3)'s definition of "commercial use." A court may properly consider the history of the subject matter in determining the purpose and intent of the law. *Calvert v. Fort Worth National Bank,* 163 Tex. 405, 356 S.W.2d 918 (1962). Where the meaning of a statutory provision is unclear, in doubt, or ambiguous, the interpretation placed upon the provision by the agency is entitled to weight. *Calvert v. Kadane,*

*supra.* Although not bound by the agency construction, the court should give deference to the construction of the agency administering the statute. *Tarry Moving & Storage Company, Inc. v. Railroad Comm'n of Texas,* 359 S.W.2d 62 (Tex.Civ. App.1962), *aff'd,* 367 S.W.2d 322 (Tex.1963). Moreover, once the statute is given a particular interpretation, a court is entitled to assume that the Legislature, by failing to amend the statute, indicated its approval of the interpretation. *See Allen Sales & Servicenter, Inc. v. Ryan,* 525 S.W.2d 863 (Tex.1975). Mindful of these directives, we will examine the legislative history and the Comptroller's treatment of art. 20.04(R).

From 1961 to 1963, the exemption claimed by Direlco was art. 20.04(Q):

> Certain Utility Service Exempt. There are exempted from the taxes imposed by this Chapter the sale, production, distribution, lease or rental of and the storage, use or other consumption in this State of gas and electricity when used in industrial, manufacturing, mining, agricultural, dairy or poultry operations or pumping water for irrigation or for electrical processes such as electroplating and electrolysis.

1961 Tex.Gen. Laws, ch. 24, at 86. The exemption was essentially limited to the commercial activities now excluded from the "commercial use" definition at issue in this appeal. In 1962, the 57th Legislature directed the Texas Commission on State and Local Tax Policy (Commission) to make a comprehensive study of the Limited Sales, Excise and Use Tax Act, including art. 20.04(Q). Where the Commission recommended a statutory change in its report, it was to include a draft copy of a bill to effect such change.

Under recommendation 11 in its report, the Commission characterized art. 20.04(Q) as difficult to interpret. Much of the problem concerned the meaning of the terms "industrial," "manufacturing" and "mining" in the statute. In response to this confusion, the Commission attempted to determine the Legislature's intent in passing art. 20.04(Q). After discussing the mean-

ings of "mining" and "manufacturing," the Commission made the following observation:

> The Commission also believes that the Legislature intended all other forms of commercial usage to be taxable. This would include retail and wholesale trade, professional and personal services, amusements, hotels, *office buildings*, etc. (Emphasis added)

The Commission recommended that the Legislature amend art. 20.04(Q) to reflect clearly: (1) that gas and electricity are only exempt from the tax when used in manufacturing, mining and agriculture; and (2) gas and electricity usage in all other areas would be taxable.

Specific statutory language was proposed by the Commission which included the exact definition of "commercial use" at issue in this appeal.[2] The 58th Legislature adopted the Commission's proposed language without change, and the statute became effective on July 1, 1963. 1963 Tex. Gen. Laws, ch. 138, at 386.

Testimony at trial demonstrated that since 1963 the Comptroller's office has interpreted "commercial use" to *include* all areas of commerce, except for those specifically excluded industries. This construction of the statute is clearly based upon the Commission's report and recommendations, and the Commission's proposed statutory language which the Legislature adopted without change.

■ After reviewing the Comptroller's construction of art. 20.04(R) and its histori-

cal basis, we have concluded that the definition of "commercial use" encompasses all areas of commerce, including the leasing of commercial real estate. Since 1963, the Comptroller has interpreted "commercial use" to have this meaning. Almost every Legislature since 1963 has amended some portion of art. 20.04(R), and yet the definition of "commercial use" remains unchanged. In view of the Legislature's inaction, it is reasonable for us to assume that the Legislature has indicated its approval of the Comptroller's construction of the statute. The first point of error is overruled.

■ Direlco's second point of error argues that the trial court erred in allowing into evidence: (1) the report of the Texas Commission on State and Local Tax Policy; and (2) the testimony of Robert Norwood. This argument rests upon the contention that both were improperly admitted to show legislative intent. The Commission's report is identified and discussed above. Mr. Norwood participated in the Commission's research for the report. He testified that the Commission's proposed language for the subsequent art. 20.04(R) was enacted into law without change.

We have already concluded that the definition of "commercial use" in art. 20.04(R) is unclear and ambiguous. In interpreting the statute, we have applied the Comptroller's construction of art. 20.04(R) without regard to legislative intent. Our focus on the Commission's report was to clearly identify the Comptroller's interpretation of

---

**2.** Gas and Electricity. There are exempted from the taxes imposed by this Chapter the sale, production, distribution, lease or rental of and the storage, use or other consumption in this State of gas and electricity except when sold for residential use or commercial use.

For the purpose of this subsection, the terms "residential use" and "commercial use" shall have the following meanings:

"Residential use" means use in a family dwelling or building or portion thereof occupied as the home, residence, or sleeping place of one or more persons.

*"Commercial use" means use by persons engaged in selling, warehousing or distributing a*

*commodity or service, either professional or personal.*

The term "commercial use" specifically does not include use by persons engaged in: (1) processing tangible personal property for sale as tangible personal property; (2) exploration for a production and transportation of a material extracted from the earth; (3) agriculture, including dairy or poultry operations and pumping water for farm and ranch irrigation; or, (4) electrical process such as electroplating, electrolysis and cathodic protection.
(Emphasis added).

the statute, and the historical basis for that interpretation. Although the district court admitted the report to show legislative intent, it also found that the statute was ambiguous and applied the Comptroller's interpretation of it. If there was any error in the admission into evidence of the Commission report, it was not "reasonably calculated to cause and probably did cause the rendition of an improper judgment...." Tex.R.Civ.P.Ann. 434 (1985). After reviewing Mr. Norwood's testimony on direct examination, we were unable to find any testimony concerning legislative intent. In substance, his testimony simply provided the foundation for admitting the Commission's report into evidence. The second point of error is overruled.

In its third point of error, Direlco asserts that art. 20.04(R) is essentially a statute *imposing* a tax, rather than one which permits an *exemption*. Direlco reads the statute to shift the burden from exemption to taxation. Taxing statutes are strictly construed against the taxing authority, while a party claiming an exemption from taxation must clearly prove he falls within the exemption. *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268 (Tex.1979). As a result, Direlco argues that the trial court erred in requiring Direlco to prove it fell within the exemption, rather than strictly construing the statute against the taxing authority.

We have concluded that Direlco's position in this appeal is tantamount to a claim for *exemption* from the Limited Sales, Excise and Use Tax Act. Moreover, the title of art. 20.04 is "Exemptions." We cannot reasonably say that Direlco is avoiding a taxing statute, but rather it seeks the protection of a tax exemption within the Act. Taxation is the rule, and exemption is the exception. *Bullock v. National Bancshares Corp., supra.* The third point of error is overruled.

The judgment of the district court is affirmed.