**Bob BULLOCK, Comptroller of Public Accounts of the State of Texas, et al., Appellants,**

v.

**HOUSE OF LLOYD, INC., Appellee.**

**No. 3–89–129–CV.**

Court of Appeals of Texas, Austin.

Aug. 8, 1990.

Rehearing Overruled Sept. 19, 1990.

Jim Mattox, Atty. Gen., Harriet D. Burke, Marianne S. Dwight, Asst. Attys. Gen., Austin, for appellants.

Randall B. Wood, Ray, Wood & Fine, Austin, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

CARROLL, Justice.

The Comptroller of Public Accounts decided appellee had conducted business in Texas within the meaning of the Texas Franchise Tax Act and was, consequently, subject to the corporate franchise tax. Tex. Tax Code Ann. §§ 171.001 *et seq.* (1982 & Supp.1990). Appellee, a foreign corporation, relied upon a previous agency construction to the contrary and sued appellants [1] for a refund of franchise taxes. After the cause was submitted upon stipulated facts, the district court determined that appellee was not subject to the franchise tax and was entitled to a refund. We will affirm the district court's judgment.

## BACKGROUND

Corporations are subject to franchise tax liability (1) if the corporation *"does business in this state"*; (2) if it is chartered in Texas; or (3) if it is authorized to do business in the state. Tex. Tax Code Ann. § 171.001 (1982) (emphasis added). Appellee, a Missouri corporation, has never been required to hold a certificate of authority to conduct business in Texas. Appellee's tax liability therefore turns on whether appellee "d[id] business" in Texas. *Id.*

Appellee sells toys and gifts nationwide through independent contractors who solicit catalogue orders during sales parties. After the independent contractors forward the orders to Missouri, appellee ships the ordered merchandise from Missouri to the independent contractors for distribution. Other than the activities of the independent contractors described above, appellee has no presence in Texas.

Until September 5, 1983, when the Comptroller changed the rule defining when a corporation was "doing business in Texas" for franchise tax purposes, corporations soliciting merchandise sales through independent contractors were not considered by the Comptroller to be subject to the franchise tax. Before September 5, 1983, the Comptroller's rule 026.02.12.016 provided that a corporation was "doing business in

---

**1.** Appellants are Bob Bullock, Comptroller of Public Accounts of The State of Texas; Jim Mattox, Attorney General of The State of Texas; and Ann W. Richards, Treasurer of The State of Texas.

Texas" if it transacted "some substantial part of its ordinary business in Texas." After the 1983 repeal of rule 026.02.12.016 and adoption of rule 3.406 through Administrative Procedure and Texas Register Act rulemaking procedures, a corporation was "doing business in Texas" for franchise tax purposes if it transacted "some part of its ordinary business in Texas." [2] 34 Tex.Admin.Code § 3.406; Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Supp.1990).

The Comptroller interpreted his new rule 3.406 to include solicitation sales by independent contractors and, consequently, assessed appellee for franchise taxes under section 171.001 of the Tax Code. Initially, the Comptroller's audit of appellee included tax liability before September 5, 1983. The Comptroller later amended his audit, deleting all liability allegedly arising before September 5, 1983, and agreed by stipulation that *no interpretation of the franchise tax law existed that would have imposed tax liability on appellee before September 5, 1983.* The parties have stipulated also that the provision (imposing tax liability) in the franchise tax law, "do[es] business in this state," now set out in section 171.001 of the Tax Code, existed in every franchise tax statute *in identical form since the passage of House Bill 8, Omnibus Tax Law,* Acts 1941 of the 47th Legislature. *See* Tex. Tax Code Ann. § 171.001 (1982). Thus, the issue before this Court is simply whether the Comptroller may impose a franchise tax upon appellee pursuant to agency rule 3.406 adopted in 1983?

## THE PARTIES' CONTENTIONS

In seven points of error, the Comptroller attacks numerous conclusions of law and a finding of fact by the district court. The Comptroller complains particularly of the district court's conclusions of law that the section 171.001 language, "does business in this state," should be strictly construed against the Comptroller, and that the long-standing administrative construction of the franchise tax law before September 5, 1983, should be afforded great weight pursuant to the doctrine of legislative acceptance.

Essentially, the Comptroller takes the position that the Legislature has intended since 1941 to tax corporations engaged in solicitation sales in the state; that the statutory language of section 171.001 of the Tax Code imposing the tax is not ambiguous; that the tax could have been imposed constitutionally in 1941, notwithstanding the Comptroller's erroneous construction of the statute before September 5, 1983; and that a 1987 legislative enactment exempted corporations soliciting sales at trade shows from the franchise tax, and therefore, there is no logical reason for exempting such corporations if they already had not been subject to the tax.

Appellee responds that the statutory phrase, "does business in this state," is ambiguous, and thus, the language should be construed strictly against the state; that the state officers charged with the administration of the franchise tax law (the Comptroller and, previously, the Secretary of State) interpreted the franchise tax statute from 1941 until September 5, 1983, as not being applicable to corporations such as appellee; that when a statute has been repeatedly re-enacted without change after a longstanding administrative construction, the administrative construction should be given considerable weight in interpreting the statute (doctrine of legislative acceptance); that absent legislative enactment, the longstanding administrative construction cannot now be changed; and that the Legislature did not intend to impose the franchise tax on foreign corporations soliciting sales via independent contractors be-

---

**2.** Effective January 9, 1986, the Comptroller's rule 3.406 reads in pertinent part:

    (b) A corporation is doing business in Texas for purposes of Chapter 171 of the Texas Tax Code when it has a constitutional nexus with Texas for the purpose of franchise taxation.
    (c) Some specific activities which constitute doing business in Texas are:

    (4) Solicitation. Having ... independent contractors ... in Texas ... to promote or induce sales....

34 Tex.Admin.Code 3.406 (1989). This current version postdates the tax years at issue in this appeal and is, therefore, not applicable here.

cause at the time of the 1941 enactment of the relevant statutory language, such taxation would have been unconstitutional.

## DOCTRINE OF STRICT CONSTRUCTION

■ If the Legislature's intent is apparent from the plain language of the statute, we need not analyze extrinsic evidence of legislative intent. *Minton v. Frank*, 545 S.W.2d 442, 445 (Tex.1976). On the other hand, if the wording of a tax statute is ambiguous, we will strictly construe the language against the taxing authority. *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 169 (Tex.1977); *Direlco, Inc. v. Bullock*, 711 S.W.2d 360, 365 (Tex. App.1986, writ ref'd n.r.e.); *Bullock v. Ramada Texas, Inc.*, 586 S.W.2d 651, 653 (Tex.Civ.App.1979, writ ref'd n.r.e.); *Graham v. City of Fort Worth*, 75 S.W.2d 930, 933 (Tex.Civ.App.1934, writ ref'd).

■ The Comptroller contends that the section 171.001 language, "does business in the state," is not ambiguous in light of the franchise tax statute as a whole and United States Supreme Court decisions regarding state taxation of activities similar to those of appellee. The Comptroller further argues that because the section 171.001 language is not ambiguous, the doctrine of strict construction should not apply.

In view of the following circumstances— that before 1983 the Comptroller did not seek to impose the franchise tax on corporations such as appellee; that the franchise tax statute language has remained virtually unchanged since 1941; that the Comptroller admits that there is no "express legislative intent" dispositive of the meaning of the original 1941 enactment; and that the Comptroller now contends that pre–1983 administrative interpretations were erroneous—we are hard-pressed to conclude that the statutory language is not ambiguous. Accordingly, we sustain the district court's strict construction of the language, "does business in this state," against the Comptroller at the franchise taxing authority. *Statistical Tabulating*, 549 S.W.2d at 169; *Direlco*, 711 S.W.2d at 365; Tex.Tax Code Ann. § 171.001 (1982).

## DOCTRINE OF LEGISLATIVE ACCEPTANCE

■ The parties stipulated that the provision in the franchise tax law, "does business in this state," has existed virtually unchanged in every franchise tax statute since the passage of the 1941 Omnibus Tax Law. The franchise tax law has been reenacted and amended numerous times since 1941. *See* Tex.Tax Code Ann. § 171.001 (1982). The parties agree that from 1941 until September 5, 1983, the Secretary of State and the Comptroller, the state officials successively responsible for the assessment and collection of franchise taxes, interpreted the franchise tax statutes as being inapplicable to corporations situated like appellee. This four-decade construction dates back to the enactment that originally applied the franchise tax to foreign corporations "doing business in Texas" even if they were not "authorized to do business" in the state. *See* 1941 Tex.Gen. Laws, ch. 184, art. VIII, § 1, at 289.

■ An administrative officer's construction of statutory language is entitled to great weight in the interpretation of the statute, especially when the specific construction has continued for a long time by a great many officers. *Big Lake Oil Co. v. Reagan County*, 217 S.W.2d 171, 173 (Tex. Civ.App.1948, writ ref'd). When an agency interpretation has been in effect at the time the Legislature amends the law, and when the amendment makes no substantial change to the particular statute in question, or when the Legislature has re-enacted the statute without substantive change, the Legislature essentially has accepted agency's interpretation. *Humble Oil & Ref. Co. v. Calvert*, 414 S.W.2d 172, 180 (Tex.1967); *Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 273–274 (1944); *Direlco*, 711 S.W.2d at 363; *Calvert v. H L & P Co.*, 369 S.W.2d 502, 509–510 (Tex.Civ.App. 1963, writ ref'd n.r.e.). The legislatively accepted interpretation can be changed only if prompted by clear statutory authorization. *Humble Oil*, 414 S.W.2d at 180.

On September 5, 1983, the Comptroller reversed an interpretation of the franchise

tax law that spanned several decades. The Comptroller adopted this change by agency rule 3.406 without corresponding legislative authorization. Before September 5, 1983, the most recent legislative enactment affecting the State's authority to impose the franchise tax on foreign corporations came in 1981. The 1981 legislation involved the codification of article 12.01, title 122A of the Texas Revised Civil Statutes; this legislation again re-enacted, *with no substantive change,* the original 1941 language that imposed the franchise tax on foreign corporations not holding a certificate of authority but doing business in Texas. 1981 Tex.Gen.Laws, ch. 389, § 171.001 at 1691, § 39(f) at 1787.

Because the Comptroller's construction, and his predecessors' construction, was of such long-standing duration, it should not have been changed absent clear statutory authorization. *Humble Oil,* 414 S.W.2d at 180. Accordingly, we sustain the district court's application of the doctrine of legislative acceptance against the Comptroller's current interpretation of section 171.001 of the Tax Code.

## TAX CONSTITUTIONALITY IN 1941

In 1941, the Legislature first imposed the franchise tax on foreign corporations not holding a certificate of authority but "doing business in Texas." 1941 Tex.Gen. Laws, ch. 184, art. VIII, § 1 at 289. The Comptroller contends that in 1941 the Legislature could have constitutionally imposed the franchise tax on corporations situated like appellee, and therefore, appellee was subject to the franchise tax.

The Comptroller offers numerous cases that would "support" the constitutionality of the imposition of the franchise tax in 1941 on a corporation situated like appellee: *McGoldrick v. Berwind–White Coal Mining Co.,* 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940); *Felt & Tarrant Mfg. Co. v. Gallagher,* 306 U.S. 62, 59 S.Ct. 376, 83 L.Ed. 488 (1939); *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938); and *Southern Natural Gas Corp. v. Alabama,* 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970 (1937). On the other hand, appellee proffers several cases "supporting" the unconstitutionality of the tax on a corporation situated like appellee if the tax had been imposed in 1941: *Puget Sound Stevedoring Co. v. Tax Comm. of Washington,* 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68 (1937); *Galveston, Harrisburg & San Antonio Ry. Co. v. Texas,* 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031 (1908); and *Clark v. Atlantic Pipe Line Co.,* 134 S.W.2d 322 (Tex.Civ.App. 1939, writ ref'd).

■ Regardless of the possibility that such a tax might have been constitutional in 1941, we are bound by the Legislature's intent measured by the meaning of the statutory terms assigned by the Legislature at the time of the original enactment of the statute. *Calvert v. Texas Pipe Line Company,* 517 S.W.2d 777, 780 (Tex.1974); *see Big Lake,* 217 S.W.2d at 173. Because we have no way of determining whether the Legislature believed that such a tax would be constitutional and, therefore, intended for the franchise tax to apply to a corporation situated like appellee, we re-affirm the district court's application of the time-honored doctrines of strict construction and legislative acceptance as described above.

## SUBSEQUENT LEGISLATIVE ENACTMENTS AS EVIDENCE OF LEGISLATIVE INTENT

Finally, the Comptroller asserts that the 1987 enactment of Tax Code section 171.-084 is dispositive of the Legislature's intent with regard to section 171.001. In 1987, the Legislature exempted a corporation from the franchise tax if the corporation's only business activity in Texas involved a solicitation of personal property orders conducted on an occasional basis at trade shows. Tex.Tax Code Ann. § 171.084 (Supp.1990). The Comptroller equates the activity described in section 171.084 with appellee's operational presence in Texas. The Comptroller argues that this exemption and section 171.001 are *pari materia,* and therefore, they must be construed with reference to one another. That is, the Comptroller contends that the Legislature

would not exempt certain corporate activity from the franchise tax unless that activity was already subject to the tax. *See* Tex.Tax Code Ann. § 171.001 (1982).

We will look to the circumstances surrounding the enactment of section 171.084 to determine whether we should rely on that enactment in order to ascertain the scope of section 171.001 and its predecessor statutes dating back to 1941. *See* Singer, *Sutherland Statutory Construction*, § 22.30, at 266–277 (Sands 4th ed.1985). We note that in section 171.084, the Legislature did not specify whether the term, "sales representatives," includes independent contractors—the classification of salespeople at issue here. Even if the Legislature intended for section 171.084 to apply to independent contractors situated like those affiliated with appellee, we have no way of determining whether the Legislature was referring to section 171.001 and its previous enactments dating back to 1941 or responding to the Comptroller's September 5, 1983, rule change which reversed four decades of agency interpretation. Accordingly, we do not find the Comptroller's *pari materia* argument persuasive.

## CONCLUSION

Because we are persuaded that the doctrines of strict construction and legislative acceptance control the outcome of this cause, we hold that the Comptroller lacked authority to impose the franchise tax upon appellee pursuant to the Comptroller's September 5, 1983, rule change. We therefore overrule appellants' seven points of error.

The judgment of the district court is affirmed.