Bob **BULLOCK**, Comptroller of Public Accounts of the State of Texas, et al., Appellants,

v.

**MARATHON OIL COMPANY, Appellee.**

Bob **BULLOCK**, Comptroller of Public Accounts of the State of Texas, et al., Appellants,

v.

**MARATHON PETROLEUM COMPANY, Appellee.**

Nos. 3–89–216–CV, 3–89–217–CV.

Court of Appeals of Texas, Austin.

Sept. 19, 1990.

Rehearing Overruled Nov. 28, 1990.

Jim Mattox, Atty. Gen., Harriet D. Burke, Asst. Atty. Gen., Austin, for appellants.

Scott Moore, McGinnis, Lochridge & Kilgore, Austin, for appellee.

Before POWERS, JONES and EARL W. SMITH,* JJ.

---

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003 (1988).

EARL W. SMITH, Justice.

Marathon Oil Company and Marathon Petroleum Company, appellees, sued under Tex. Tax Code Ann. §§ 112.051–112.060 (1982 & Supp.1990), the tax protest statute, to recover franchise taxes paid under protest. Appellees also sued for declaratory judgment that the Comptroller's rule 3.403, 34 Tex.Admin.Code § 3.403(c)(14) (1987) [superseded 1988], is invalid as of the time that appellees paid the franchise taxes which are the subject of these appeals. Hereafter, appellees will be addressed as Marathon. Marathon also sought judgment under the Administrative Procedure and Texas Register Act (APTRA), Tex.Rev. Civ.Stat.Ann. art. 6252–13a, § 12 (Supp. 1990), declaring that Rule 3.403 was an invalid exercise of the Comptroller's authority and that it violated Tex. Tax Code Ann. § 111.002 (1982).

Marathon filed motions for summary judgment in each cause below. Appellants [1] responded with cross-motions for summary judgment and pleas to the jurisdiction as to Marathon's requests for declaratory relief. Marathon's motions were granted, and judgments rendered for Marathon Petroleum in the sum of $55,566, and for Marathon Oil in the sum of $402,033.00. Appellants' motions for summary judgment and pleas to the jurisdiction were denied.

Appellants, in three points of error, contend that the trial court erred: (1) in granting Marathon's motions for summary judgment; (2) in failing to grant appellants' motions for summary judgment; and (3) in denying appellants' pleas to the jurisdiction regarding the declaratory judgments sought by Marathon. We will affirm the judgments of the trial court.[2]

## THE ISSUE

The period in question is the 1987 franchise tax report (covering the privilege period from May 1, 1987, through April 30, 1988). Marathon's receipts and taxable capital reported on its 1987 franchise tax report were based on information from its accounting period ending December 31, 1986. The 1987 report was to be filed by March 15, 1987. In the 1987 report, Marathon reported certain receipts from "barter exchange agreements." In such exchange agreements, oil, gas, and other petroleum products held as inventory are exchanged between companies for like products. This procedure permits the companies to avoid costly transportation charges between distant refineries. To illustrate, Marathon produces sour crude oil in West Texas, but its nearest refinery processes only sweet crude oil. To avoid having to transport the sour crude to a distant refinery, Marathon exchanges its sour crude for another company's sweet crude and processes the sweet crude in its nearby refinery. The companies exchanging oil may equalize differences in grade, quality, or location of the exchanged products with cash payments. *See* H. Williams and C. Meyers, *Manual of Oil and Gas Terms* 323 (4th ed.1987). The "barter exchange agreements" reported by Marathon were listed as gross receipts and were taxed by the Comptroller.

Marathon contended that the exchanges of oil for oil should have been excluded from gross receipts because the Comptroller's long-standing interpretation of an ambiguous statute, excluding such exchanges from gross receipts, could not be changed without legislative authority.

Appellants argue that Tex. Tax Code Ann. §§ 171.103 and 171.105 (1982 and Supp.1989) are not ambiguous, that the Comptroller had been incorrect in his long-standing interpretation of these articles, and that he properly included the exchange in gross receipts in 1987.

Section 171.103 provides:

The gross receipts of a corporation from its business done in this state is the sum of the corporation's receipts from:

---

1. Appellants are Bob Bullock, Comptroller of Public Accounts of The State of Texas; Jim Mattox, Attorney General of The State of Texas; and Ann W. Richards, Treasurer of The State of Texas.

2. The cases are identical as to the issues involved, were argued together, both are decided in this opinion, and will be referred to as though one case.

(1) each *sale* of tangible personal property delivered or shipped to a buyer in this state regardless of the FOB point or another condition of the *sale;*

(2) each service performed in this state;

. . . . .

(5) *other business* done in this state.

(Emphasis added.)

Section 171.105(a) provides:

(a) The gross receipts of a corporation from its entire business is the sum of the corporation's receipts from:

(1) each *sale* of the corporation's tangible personal property;

(2) each service, rental or royalty; and

(3) *other business.*

(Emphasis added.)

The words "exchange" or "barter" do not appear in either section. Thus, the issue: are exchanges, as described above, "sales" or "other business" within the statutory language? Are these statute sections ambiguous? Appellants argue that the phrases "each sale of tangible personal property" and "each sale of the corporation's tangible personal property" unambiguously include exchanges of property. Since "sale" is not defined, it must be given its ordinary meaning. Tex. Gov't Code Ann. § 311.011(a) (1988); *Direlco v. Bullock*, 711 S.W.2d 360, 362 (Tex.App.1986, writ ref'd n.r.e.).

A sale is defined as:

A contract between two parties, called, respectively, the "seller" (or vendor) and the "buyer" (or purchaser), by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers, the title and the possession of property.

or,

An agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.

or,

A revenue transaction where goods or services are delivered to a customer in return for cash or a contractual obligation to pay.

or,

The contract of "sale" is distinguished from "barter" (which applies only to goods) and "exchange" (which is used of both land and goods), in that both the latter terms denote a commutation of property for property; i.e., the price or consideration is always paid in money if the transaction is a sale, but, if it is a barter or exchange, it is paid in specific property susceptible of valuation.

Black's Law Dictionary 1200 (5th ed.1979). Webster's New International Dictionary 792 (3d Ed.1981) defines "exchange" as "the art of giving or taking one thing in return for another as if equivalent...."

As Marathon notes, the franchise tax statutes have been amended many times since the inception of the tax in 1907, without however, changing the definition of "sale" until August 31, 1987. "Sale" was never defined to include "exchanges." *See* Tex. Tax Code Ann. §§ 171.103 and 171.105 (1982 and Supp.1989) (amendment history therein); Note, *Receipts from Intangible Assets*, 5 Hous.L.Rev. 132 (1967). It is of particular note that the Comptroller *excluded* exchange agreements from gross receipts until March 13, 1987 (after the Attorney General in 1986, in reply to the Comptroller's inquiry, issued an opinion advising the Comptroller that exchange agreements should be included in gross receipts for franchise tax purposes. Op. Tex.Att'y Gen. No. JM–478 (1986)).

Attached to appellants' brief are the following:

1. Comptroller's Rule 026.02.12.013 (dated 12/31/75) (based on Op.Tex. Att'y Gen. No. M–1190 (1972)).

2.o. Deliveries of oil and gas pursuant *to exchange agreements* between oil and gas companies do *not constitute* receipts for franchise tax calculations, except amounts paid by one of the parties as the result of excess deliveries under the exchange agreement.

2. Comptroller's Rule 026.02.12.013 (effective April 15, 1976):

2.o. Deliveries of oil and gas pursuant to written exchange agreements between oil and gas companies do *not* result in receipts for franchise tax calculations.

3. Comptroller's Rule 026.02.12.013 (effective May 9, 1979):

(b) (15) [worded exactly as set out in 2 above]

4. Comptroller's Rule 3.403 (effective August 15, 1980):

(b)(15) Deliveries of oil and gas pursuant to written exchange agreements between oil and gas companies do not result in receipts for franchise tax calculations.

5. Comptroller's Rule 3.403 (effective February 4, 1985):

(c)(14) [worded exactly as in 4 above]

6. Comptroller's Rule 3.403 (effective August 4, 1985):

(c)(14) [worded exactly as in 4 and 5 above]

The Comptroller substantively amended Rule 3.403 in 1987. Effective March 13, 1987, section (c)(14) provides:

Deliveries of real or personal property pursuant to exchange agreements (e.g., oil exchange agreements) or buy-sell contracts result in receipts for franchise tax calculations at the time of delivery by the corporation, based on the fair market value of the property delivered.

This new rule reversed the Comptroller's long-standing interpretation of the franchise tax statutes. The Comptroller readily concedes that "from 1972 through March 12, 1987, the Comptroller did not require corporations to consider barter exchange agreements as gross receipts in reporting their franchise taxes" and does not dispute Marathon's claim that the Comptroller did not treat, for some 79 years, barter exchanges as a part of gross receipts for tax purposes.

After the adoption of the new rule 3.403 by the Comptroller, the legislature added section 171.112 to the Tax Code (Supp. 1989). It provides:

(b) Except as otherwise provided in this section, a corporation must calculate gross receipts in accordance with *generally accepted accounting principles.* ...

Tex. Tax.Code Ann. § 171.112 (Supp.1989).

The parties agreed in argument before this court that generally accepted accounting principles (GAAP)[3] would exclude exchanges from gross receipts and that Marathon treated the exchanges as non-monetary transactions under GAAP.

## DECISION

■ We hold that §§ 171.103 and 171.-105, defining gross receipts, are ambiguous in that "sale" and "other business" are not defined. A statute imposing a tax is strictly construed against the taxing authority and liberally in favor of the entity sought to be held. *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 169 (Tex.1977). An administrative officer's construction of statutory language is entitled to great weight in the interpretation of the statute in cases in which the construction has continued for a long time. As in this case, if an agency interpretation is in effect at the time the legislature amends the law without making any substantial change in the statute, the legislature is deemed to have accepted the agency's interpretation. *Humble Oil & Refining Co. v. Calvert*, 414 S.W.2d 172, 180 (Tex.1967); *Federal Crude Oil Co. v. Yount–Lee Oil Co.*, 122 Tex. 21, 52 S.W.2d 56, 62 (1932); *Bullock v. House of Lloyd*, 797 S.W.2d 133 (Tex.App.—Austin, 1990); *Direlco*, 711 S.W.2d at 363. Therefore, the Comptroller could not change his long-standing statutory interpretation that excluded exchange agreements from gross receipts unless there was clear legislative authorization to do so, and the 1987 version of 3.403(c)(14) is invalid. *Humble Oil*, 414 S.W.2d at 180.

Appellants argue that the statutes are unambiguous in the use of the word "sale."

3. Accounting for Nonmonetary Transactions, Accounting Principles Board Opinion No. 29 (May 1973).

In the trial court, they argued that the phrases "other business done in this state" in section 171.103(5) and "other business" in section 171.105(a)(3) unambiguously included exchanges of property. However, the Supreme Court has held that similar language, "business done in Texas" and "all other business receipts," as used in the franchise tax is ambiguous. *Humble Oil*, 414 S.W.2d at 176. As support for their position, appellants cite *Eppstein v. State*, 105 Tex. 35, 143 S.W. 144 (1917); *Bullock v. Enserch Exploration Inc.*, 614 S.W.2d 215 (Tex.Civ.App.1981, writ ref. n.r.e.), cert. denied, 455 U.S. 946, 102 S.Ct. 1445, 71 L.Ed.2d 659 (1982); *Southwestern Bell Telephone v. Calvert*, 479 S.W.2d 697 (Tex. Civ.App.1972, writ ref'd n.r.e.); *McKinney v. City of Abilene*, 250 S.W.2d 924 (Tex. Civ.App.1952, writ ref'd n.r.e.). However, appellants concede that in *Bullock v. Enserch* the holding was that "a *sale* of property where the property *sold* is delivered or shipped to a purchaser in Texas comes clearly within the statutory language in 171.103 of sales of tangible personal property...." *Id.* (emphasis added). No question whether an exchange of property occurred was involved.

*McKinney v. City of Abilene*, 250 S.W.2d at 924, does not control. *McKinney* involved the construction of a city charter provision requiring, before any land owned by the city could be sold, publication in a newspaper giving notice of the time and place of a public hearing at which all interested persons would be given an opportunity to be heard in support of or against the sale. The city, without the required publication, exchanged land, acre for acre, with McKinney. The city successfully sued to have the deed executed by the city and McKinney declared void. On appeal, McKinney contended that an exchange of property was not a sale and that the charter provision did not apply. The court of appeals affirmed. Though it admitted that there was a technical difference between a sale and an exchange of property, the court held that if the word sale were construed in a narrow and restricted sense so as to exclude an exchange or any other means by which a city's real estate may be disposed of, that construction would defeat the intent of the charter provision. *McKinney* did not involve a long-standing administrative interpretation.

*Eppstein*, 143 S.W. at 144, simply held that if the taxpayer sold on the basis of cash and credit, he was required to pay the tax on gross sales from his business, whether the sales price was collected or uncollected, and became a bad debt.

The question in *Southwestern Bell Telephone v. Calvert*, 479 S.W.2d 697 (Tex.Civ. App.1972, writ ref'd n.r.e.), was whether rental payments paid to the telephone company by those who leased its telephone poles were taxable as gross receipts of the telephone company. A careful reading of this case reveals that the transaction was a lease for cash, not an exchange, and therefore taxable. Southwestern Bell would also lease poles from other entities. In accounting for the rentals to be received and paid under the lease agreements, the telephone company used two accounts: in one, a revenue account, a gross dollar figure was entered showing the sum of money due the telephone company for use of its poles; in the other, an expense account, gross dollar figures were used to show sums due to other entities for use by the telephone company of the other entities' poles. The transactions were leases for cash, not exchanges of telephone poles or pole usage.

Appellants also contend that non-inclusion of exchange agreement receipts will result in unequal and non-uniform tax treatment, in violation of Texas Constitution Article VIII, Sec. 1 and the equal protection clauses of the Texas and United States Constitutions, arguing that "a barter exchange agreement is basically the same as a buy-sell agreement but no cash changes hands except where there is a difference in quality, location or grade." Appellants concede that *APB 29*, as used by Marathon, treats an exchange of property held for sale in the ordinary course of business as a non-monetary exchange. No revenue is recognized from such transactions. The argument of unconstitutionality is to say that this section of the franchise

tax as administered by every Comptroller in this century was unconstitutional until 1987.

■ We find the argument to be without merit. First, we agree with Marathon that inherent in the power to tax is the state's freedom to select the subjects of taxation. *Bullock v. Texas Monthly*, 731 S.W.2d 160 (Tex.App.1987, writ ref'd n.r.e.), rev'd on other grounds, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989). The legislature's selection of the subjects of taxation is presumed to rest on a rational basis if any facts would support that basis. *Carmichael v. Southern Coal Coke Co.*, 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); *Texas Monthly*, 731 S.W.2d at 163. The party attacking the tax has the burden to show discrimination by negating every conceivable basis which might support it. *Madden v. Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940).

Appellants argue that the Comptroller's former interpretation of Rule 3.403, followed and approved by the legislature since 1907, was unconstitutional. Logically, appellants must also be held to say that the current statute, which follows the long-standing interpretation of the Comptroller to exclude exchanges, is also unconstitutional. The legislature has determined (by requiring GAAP accounting) that a distinction exists between those transactions generating cash receipts and those that do not, i.e., exchanges. We disagree with appellants' argument that non-inclusion of exchange agreements is unconstitutional and overrule appellants' first and second points of error.

■ Appellants, in their third point of error, urge that the trial court erred in denying their plea to the jurisdiction regarding the declaratory judgment sought by Marathon. Marathon, in its petition, brought suit under the protest statute. Tex. Tax Code Ann. §§ 112.052 and 112.053. It also sought a declaratory judgment, pursuant to APTRA, that 34 Tex.Admin.Code § 3.403(c)(14) was invalid. Appellants filed a plea to the jurisdiction to the declaratory judgment pleading, contending that APTRA was not a proper basis for

jurisdiction because the relief sought under the tax protest statute would provide complete relief to Marathon; further, appellants contended that the Tax Code provides the only manner and means by which a suit can be brought against the state by a taxpayer to recover franchise taxes paid. The plea was denied. Appellants, citing *Texas Liquor Control Board v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex. 1970); *Texas Employment Comm'n v. Child, Inc.*, 738 S.W.2d 56, 58 (Tex.App. 1987, writ ref'd n.r.e.), cert. denied, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988), state that Marathon should not be entitled to redundant remedies.

In *Texas Liquor Control Board*, there were two companion cases before the Supreme Court in which plaintiffs sought declaratory and injunctive relief to prevent the Texas Liquor Control Board and its members from attempting to enforce a particular interpretation of the Texas Liquor Control Act contained in the Penal Code. The Supreme Court held that neither remedy was appropriate. The court emphasized that it was dealing with a penal statute, the meaning and validity of which should ordinarily be determined by courts exercising criminal jurisdiction, and that civil courts should not interfere with the day-to-day operations of the Board unless there are compelling reasons to do so. As to the declaratory judgment sought by plaintiffs, there were two administrative proceedings instituted before the filing of the suits by plaintiff, which proceedings might or might not have turned on a construction of the statute. The court held:

> As a general rule, an action for declaratory judgment will not be entertained if there is pending, at the time it is filed, another action or proceeding between the same parties and in which may be adjudicated the issues involved in the declaratory action. [Citations omitted.]
>
> In our opinion, this rule is particularly applicable where, as here, the construction of a penal statute is in issue.... In so far as the declaratory judgment is sought for guidance of the Board in the pending proceedings, we hold that the

trial court should have declined to exercise jurisdiction.

The court did, however, state:

As pointed out in *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709 [(1945)], an action for declaratory judgment is neither legal nor equitable, but is sui generis. The existence of another remedy does not necessarily deprive the court of jurisdiction to grant declaratory relief. In this instance, however, we are concerned only with the interpretation of a penal statute, and the Board has issued no directive or rule affecting plaintiffs.

.    .    .    .    .

The considerations that lead courts of equity to deny injunctive relief against enforcement of the criminal laws apply with equal force to an action for declaratory judgment construing a penal statute.

*Id.*

In *Texas Employment Comm'n v. Child, Inc.*, 738 S.W.2d at 56, the question was whether Child, Inc. was an "educational institution." If so, the unemployment compensation law would have prevented employees of Child, Inc. from receiving benefits. The Commission ruled that Child, Inc. was not an educational institution, and that its employees were entitled to benefits. Child, Inc. filed suit in the district court requesting a declaratory judgment that it operated an educational institution exempt from unemployment compensation claims and for a reversal of the Commission's decision. This court held that Child, Inc. properly received its right of review under the statute. We noted that:

Appellee coupled his request for judicial review with a request for declaratory judgment. A better drafting of the pleadings would have made the prayer for declaratory relief subject to the prayer for reversal. While the order of requested relief does not defeat Child, Inc.'s right to its remedy, neither does it entitle Child, Inc. to redundant remedies. Judicial review of the Texas Employment Commission's decision will resolve the same controversy sought to be resolved by the declaratory judgment. Where a

statute provides a method for attack on a commission order, an action for declaratory judgment does not lie. *Railroad Commission of Texas v. Home Transportation Company*, 670 S.W.2d 319, 326 (Tex.Civ.App.1984, no writ).

This court held that Child, Inc. was entitled to judicial review and upheld the commission's ruling under the substantial evidence rule. *Child, Inc.* did not involve a declaratory judgment under APTRA, however.

In this case, Marathon had to meet the procedural requirements of the tax protest law before any actions for a *refund* could be maintained. *Robinson v. Bullock*, 553 S.W.2d 196 (Tex.Civ.App.1977, writ ref'd n.r.e.), cert. denied, 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978). Appellants concede that Marathon has fulfilled the procedural requirements of the tax protest statute. Marathon argues that although the taxpayer must follow the protest statute in order to bring a refund suit, the statute does not provide an exclusive remedy and may be joined with another action. We agree. *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709 (1945); *Hammerman & Gainer, Inc. v. Bullock*, 791 S.W.2d 330 (Tex.App.—Austin 1990) (*validity* of tax statute may be tested by § 12 APTRA action; compliance with protest statute unnecessary when no refund sought); *see also* Shannon and Ewbank, *The Texas Administrative Procedure and Texas Register Act Since 1976—Selected Problems*, 33 Baylor L.Rev. 393, 421–422 (1981). In discussing declaratory judgments, the authors said:

There is no reason to prevent a petitioner from contesting both the applicability and validity of a rule in the same proceeding. *See* Tex.R.Civ.P.Ann. art. 48 providing for alternative and inconsistent pleadings.

*Id.* at n. 190.

■ Appellants also argue that Marathon's suit for declaratory judgment will not lie because the State is protected by sovereign immunity and that the Tax Code provides the exclusive waiver of sovereign immunity for taxpayer suit. As stated above, it is true that Marathon must follow

the tax protest statute to pursue a *refund* of taxes. In a refund action, the statute provides the exclusive waiver of sovereign immunity. *See Hammerman & Gainer.* But, it is now established that suits challenging an agency's action as being outside the scope of its authority are not suits against the state requiring legislative or statutory authority. *P.U.C. v. City of Austin,* 728 S.W.2d 907, 911 (Tex.App.1987, writ ref'd n.r.e.). We disagree with appellants' reliance on sovereign immunity. We overrule point of error three.

By supplemental brief, appellants argue that the well-recognized rule of legislative acceptance of long-standing administrative construction should be overruled. In oral argument, we were specifically asked to overturn *Humble Oil and Refining Co. v. Calvert,* 414 S.W.2d 172 (Tex.1967). This, of course, we lack the power to do. Moreover, *Humble* is good law and should stand.

The judgment of the trial court is affirmed.