Mainstage v. TABC 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-91-080-CV





MAIN STAGE, INC. D/B/A PT'S II,



 APPELLANT


vs.





W. SHERMAN McBEATH, ADMINISTRATOR,


TEXAS ALCOHOLIC BEVERAGE COMMISSION, ET AL.,




 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 470,552, HONORABLE MARY PEARL WILLIAMS, JUDGE 



 



 

 Main Stage, Inc., d/b/a PT's II, (hereafter "Main Stage"), appeals from an adverse
judgment in a tax refund suit. See Tex. Tax Code Ann. § 112.051 (1982 & Pamph. 1992). 
Appellee, the Texas Alcoholic Beverage Commission (hereafter "TABC"), poses the issue on
appeal as follows: When an alcoholic-beverage permittee charges customers a fee to enter its
premises and then sells drinks at reduced prices, can the TABC collect gross-receipts tax on the
normal sales price of the beverages? Without deciding the issue, however, we will reverse and
render judgment for Main Stage because the normal sales price is not the basis on which TABC
assessed the gross-receipts tax here.



FACTS


 Main Stage operates a topless bar in Fort Worth, Texas. At times Main Stage
lowers its drink prices in addition to its organizational inhibitions. But, the bar sometimes
requires a "cover" charge at the door.

 State law authorizes TABC to collect a tax on the gross receipts from the sale or
service of mixed beverages. See Tex. Alco. Bev. Code Ann. § 202.02 (Supp. 1992). TABC
contends Main Stage sought to reduce its gross receipts and thereby reduce the amount of tax
owed by reducing its drink prices and recovering its losses through the door charge. Clearly, tax
is due on the actual gross receipts from the sale of alcoholic beverages. TABC contends that
under these circumstances it is authorized to collect tax based upon the normal selling price of
each beverage, rather than on the reduced price. However, that is not the basis on which it
assessed appellant's tax. TABC did not determine the normal price of the beverage or what the
gross receipts would have been had the drinks been sold at their normal price. Instead, it assessed
tax on Main Stage's total door receipts, relying for authority upon section 202.02 of the Alcoholic
Beverage Code and section 41.50(d)(2)(F) of TABC's auditing rules. Tex. Alco. Bev. Comm'n,
16 Tex. Admin. Code § 41.50(d)(2)(F) (1988). TABC argues only that it may assess tax on the
normal drink price and concedes it cannot exceed that basis.

 Main Stage paid the $10,128.51 tax on its door receipts under protest and then
sought a refund. See Tex. Tax Code Ann. § 112.051. Main Stage argued at trial that TABC is
not authorized under these facts to tax its total door receipts. The trial court ruled against Main
Stage.

DISCUSSION


 Main Stage raises three points of error in this appeal. The first two relate to
TABC's taxing authority. Because of our disposition of the case, we need not reach Main Stage's
third point of error.

 During the period in question, section 202.02 provided:



A tax at the rate of 12 percent is imposed on the gross receipts of a permittee from
the sale, preparation, or service of mixed beverages or from the sale, preparation,
or service of ice or nonalcoholic beverages that are sold, prepared, or served for
the purpose of being mixed with alcoholic beverages and consumed on the
premises of the permittee.



1984 Tex. Gen. Laws, 2nd C.S., ch. 31, art. 2, § 13, at 210 (Tex. Alco. Bev. Code Ann.
§ 202.02, since amended).

 Generally, door receipts are not includable in a permittee's gross receipts and
TABC does not collect tax on the proceeds. Door receipts are subject to state sales tax collected
by the Comptroller. Limited Sales, Excise, and Use Tax Act, Tex. Tax Code Ann. § 151.0028
(Pamph. 1992); Comptroller of Public Accounts, 34 Tex. Admin. Code § 3.298(1)(F)(i) (Supp.
1992) (Amusement Services). TABC assesses no tax on the service of "[c]omplimentary alcoholic
beverages," a term defined in the rules as "[t]hose alcoholic beverages served without any charge
whatsoever to the person served." 16 Tex. Admin. Code § 41.50(a)(1) (emphasis added). 
However, TABC's auditing rules provide for collection of tax on complimentary drinks which are
served to customers in conjunction with a door charge. The pertinent subsection provides:

(F) Complimentary alcoholic beverages shall be recorded on service checks only. 
A check should be prepared for each individual or party served. The check should
be prepared as if it was a normal sale and then clearly marked as being
complimentary. The service checks should be grouped daily and filed with the
daily summary showing the information on the summary as required by sub-section
(e)(2) of this section. A serving of an alcoholic beverage shall not be a
complimentary alcoholic beverage if it is served under conditions which include,
but are not limited to the following: the alcoholic beverage is served in conjunction
with food or any other thing sold to the recipient, or if any entertainment or entry
fee is charged. Any alcoholic beverage served under the above or similar
conditions is subject to the gross receipts tax computed on the basis of the normal
charge for sale or service of such alcoholic beverage by the permittee.


16 Tex. Admin. Code § 41.50(d)(2)(F) (emphasis added). (1) The rule does not expressly address
record-keeping or taxation of reduced-price drinks served in conjunction with a door charge.

 TABC argues that it may consider the conditions under which a beverage is served
or sold in determining tax liability. Thus, when a beverage is served without charge but an entry
fee is charged, the complimentary status may be disallowed and the beverage taxed at its normal
price. TABC contends that when reduced-price drinks are served in conjunction with an entry
fee, those drinks are taxable in the same manner. Reduced-price drinks, TABC argues, are not
"without any charge whatsoever," and thus are not within the statutory definition of tax-exempt,
complimentary alcoholic beverages. Further, TABC contends its authority under the last sentence
of section 41.50(d)(2)(F), authorizing it to tax receipts on the basis of the "normal charge" when
alcoholic beverages are served under "similar conditions," extends to reduced-price drinks.

 Assuming TABC's position is correct, section 41.50(d)(2)(F) does not provide for
what occurred here. The rule does not call for a tax on entry fees. At best, the rule authorizes
gross-receipts tax to be assessed based on the normal selling price of a beverage served or sold
in conjunction with the charging of an entry fee, rather than on its reduced price. As TABC
stated in its brief, the rule "does not tax the entry fees. . . . [but] only permits a tax to be based
on the `normal' selling price of alcoholic beverages . . . [and] does not impose a tax liability . . .
greater than" that price.

 Here, a normal selling price was not determined. In the case of complimentary
drinks, section 41.50 requires detailed record keeping including documenting the normal sales
charge of each beverage given away. See 16 Tex. Admin. Code § 41.50 (d)(2)(F),(e). Reduced-price drinks are not expressly encompassed within these record-keeping procedures. Main Stage
did not keep these records and could not furnish TABC the information that would allow it to
determine the normal selling price on which to assess gross-receipts tax. TABC did not determine
a normal drink charge based upon the information available. Instead, TABC imposed gross-receipts tax on the total door receipts without regard to the normal drink price. We hold that the
rule does not authorize assessing a gross-receipts tax on this basis, and TABC cites no authority
for collecting a tax on this basis.

 A rule or order promulgated by an administrative agency acting within its delegated
authority should be construed under the same principles as if it were the act of the legislature.
Texas Liquor Control Bd. v. Attic Club, Inc., 457 S.W.2d 41, 45 (Tex. 1970). Accordingly, in
the same manner as statutes imposing a tax, administrative rules must be construed strictly against
the taxing authority and liberally in favor of the taxpayer. See Bullock v. Statistical Tabulating
Corp., 549 S.W.2d 166, 169 (Tex. 1977); Bullock v. Marathon Oil Co., 798 S.W.2d 353, 357
(Tex. App. 1990, no writ).

 We sustain the first two points of error; we reverse the trial court's judgment; and
we render judgment for Main Stage in the amount of $10,128.51, plus interest and costs.



 

 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Reversed and Rendered

Filed: June 17, 1992

[Do Not Publish]

 

1. The terms "normal charge," "normal sale," and "similar conditions" are not defined.