Robinson 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00522-CV







Ben Robinson Company, Appellant



v.



Texas Workers' Compensation Commission and its members in their official capacity,


O. D. Kenemore, Ramon Class, Jack Garey, Royce Faulkner,


Donna L. Snyder and John Nash, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 94-03955, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING







 This appeal requires us to decide whether the Occupational Safety and Health Act,
29 U.S.C. § 651 (1982), preempts the Extra-Hazardous Employer Program ("the Program") as
it is currently administered by the Workers' Health and Safety Division of the Texas Workers'
Compensation Commission. See Tex. Lab. Code Ann. § 411.041 (West 1996); 28 Tex. Admin.
Code § 164.1 (West 1996). We conclude that it does.



BACKGROUND


 The Ben Robinson Company ("the Company") is a small Houston corporation in
the business of selling steel pipe and tubing. As the Company's vice-president, Gerald Robinson
handled sales, customer orders, and performed general office work. In September 1992, Gerald
Robinson took a call from a truck driver scheduled to pick up a pipe order. The driver announced
that he would arrive at the pipe yard around closing time, and asked if he could pick up the order
then; Gerald told him that no one would be around to load the pipe that late in the day. The
driver persisted in his request, suggesting that he could operate the forklift and load the pipe
himself. Gerald called his father Jerry Robinson, the president of the Company, and asked if the
driver could pick up the pipe. Jerry instructed his son not to let the driver load the pipe under any
circumstances. Despite this admonition, Gerald allowed the persistent driver to load the pipe
himself. As the driver was operating the forklift, some of the pipe rolled off, landing on Gerald
and killing him.

 Based on this fatality, the Workers' Health and Safety Division of the Texas
Workers' Compensation Commission ("the Division") identified the Ben Robinson Company as
an extra-hazardous employer. See Tex. Lab. Code Ann. § 411.041(b) (West 1996). This
designation required the Company to have a safety consultant inspect the workplace and make a
report identifying workplace hazards. See Tex. Lab. Code Ann. § 411.043(b) (West 1996). 
Following the report, the Company and the consultant formulated an "accident prevention plan"
directed towards eliminating the identified hazards. See id. § 411.043(c). When a follow-up
inspection conducted six months later indicated that the Company had complied with the accident
prevention plan, the Division removed the Company's extra-hazardous designation. See id.
§ 411.045.



DISCUSSION AND HOLDINGS


 The Company contends in two points of error that the Occupational Safety and
Health Act ("the OSH Act") preempts the Program as it is currently administered in Texas. In
its third point of error, the Company claims entitlement to costs and attorney's fees. Before
reaching the merits of these claims, however, we must address the Commission's several
arguments in support of its contention that the case should be dismissed.



Grounds for Dismissal

 The Commission first urges us to dismiss this case as moot. The Commission
correctly observes that appellate courts only determine cases in which an actual controversy exists. 
See Camarena v. Texas Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988); University
Interscholastic League v. Buchanan, 848 S.W.2d 298, 304 (Tex. App.--Austin 1993, no writ). 
The Commission claims that because it lifted the Company's extra-hazardous designation, all
justiciable issues between the parties have been resolved and any decision by this Court would be
of no practical effect. The removal of this designation does not, however, leave the Company in
the position it was in before being labelled extra-hazardous.

 First, it is important to note that the lifting of the designation following compliance
with the accident prevention plan does not erase the original finding that the Company experienced
a substantially higher-than-average injury frequency. See Tex. Lab. Code Ann. § 411.041(b)
(West 1996). Significantly, the Company's insurance carrier was notified of this fact. See id. §
411.042 (requiring division to notify employer's insurance carrier of extra-hazardous designation). 
Notice of this official determination that the Company has an excessive injury frequency could
have an adverse impact on the Company's insurance premiums and ability to obtain future
coverage, regardless of the Company's subsequent compliance with an accident prevention plan.

 The extra-hazardous designation could also have a detrimental impact on the
Company's business affairs. Current and potential customers may consider the extra-hazardous
designation a reason to do business elsewhere. The designation may also diminish the overall
value of the business. (1) Furthermore, Jerry Robinson asserted in an affidavit that the designation
has caused him mental anguish, stress, depression and other medical problems, because the
designation effectively states that he was in control of, and therefore could have prevented, the
factors which led to his son's death. See id. § 411.0415 (fatality due to factors outside employer's
control may be excluded from consideration in designating employer as extra-hazardous).

 These lasting consequences will persist beyond the lifting of the Company's original
extra-hazardous designation. On the other hand, if the Company obtains the relief it seeks, the
original designation would effectively be purged and many of the resulting detrimental
consequences would vanish. Accordingly, we hold that a live controversy exists between the
parties which can be resolved by a decision from this Court.

 Even if the case were moot, we would conclude that it falls within the "capable of
repetition yet evading review" exception to the mootness doctrine. See General Land Offices v.
Oxy U.S.A., Inc., 789 S.W.2d 569, 571 (Tex. 1990). This doctrine applies "where the challenged
act is of such short duration that the appellant cannot obtain review before the issue becomes
moot." Id. (citing Spring Branch I.S.D. v. Reynolds, 764 S.W.2d 16, 18 (Tex. App.--Houston [1st
Dist.] 1988, no writ)). When an employer is designated extra-hazardous, it has between seven
and ten months to formulate and implement an accident prevention plan. See Tex. Lab. Code §§
411.043(a), .045 (West 1996); 28 Tex. Admin. Code §§ 164.3(a), 164.5(a) (West 1996). Failure
to comply with the plan subjects the employer to severe administrative penalties, leaving the
employer with little choice but to comply. See Tex. Lab. Code Ann. §§ 411.046, 415.022 (West
1996). This compliance results in the lifting of the extra-hazardous designation. See id. §
411.045(b). Thus, in most cases, the duration of an employer's extra-hazardous status will be less
than ten months.

 Applying the mootness doctrine in a case such as this one would effectively prevent
employers from obtaining judicial review of constitutional challenges to the Program. Indeed, in
this case the Company's extra-hazardous designation was lifted even before the trial court
rendered its final judgment. Because the short duration of an employer's extra-hazardous status
renders it nearly impossible for an employer to obtain judicial review while that status remains
pending, we would hold that this case falls within the "capable of repetition yet evading review"
exception to the mootness doctrine. See State v. Lodge, 608 S.W.2d 910, 912 (Tex. 1980).

 The Commission further contends that the Company cannot properly maintain its
declaratory judgment action because the Administrative Procedure Act (the "APA") provides the
exclusive method for attacking an agency order. See Tex. Gov't Code Ann. § 2001.171 (West
1996). When a statute provides a method for attacking an agency order, a declaratory judgment
action directed at that order will not lie. See Texas Employment Comm'n v. Child, Inc., 738
S.W.2d 56, 58 (Tex. App.--Austin 1987, writ denied), cert. denied, 488 U.S. 849, 109 S. Ct. 130
(1988); Railroad Comm'n v. Home Transp. Co., 670 S.W.2d 319, 326 (Tex. App.--Austin 1984,
no writ) (declaratory judgment does not lie in direct attack on Commission order). This is
because a party is generally not entitled to redundant remedies. See Child, 738 S.W.2d at 58. 
In this case, however, the Company directs its declaratory judgment action not at the
Commission's order, but at the constitutional validity of the Program itself. This declaratory
judgment remedy is distinct from, and therefore not redundant to the remedy provided by the
APA. See Bullock v. Marathon Oil Co., 798 S.W.2d 353, 360 (Tex. App.--Austin 1990, no writ)
(holding that party could directly attack franchise tax assessment and simultaneously seek
declaratory judgment that Comptroller's rules leading to assessment were unconstitutional). We
therefore reject the Commission's assertion that the declaratory judgment action should be
dismissed on this basis.

 As a final ground for dismissal, the Commissioner contends that, because the
Company has participated in the workers' compensation system, it cannot now bring a
constitutional challenge to the Program. See Texas Architectural Aggregate v. Adams, 690
S.W.2d 640, 643 (Tex. App.--Austin 1985, no writ) (party who has availed itself of statute's
benefits cannot then attack statute's constitutionality). The Company did not accept benefits
associated with the Program, however, because it is subject to the Program's requirements
regardless of whether it participates in the workers' compensation system. See Tex. Lab. Code
Ann. § 411.002 (West 1996). We accordingly conclude that the Company's participation in the
workers' compensation system does not bar its constitutional challenge to the Program.



The Extra-Hazardous Employer Program

 An employer whose rate of workplace injuries exceeds the rate reasonably expected
for that employer's business or industry is an extra-hazardous employer. Tex. Lab. Code Ann.
§ 411.041(b) (West 1996); see also 28 Tex. Admin. Code § 164.1 (West 1996). The Workers'
Health and Safety Division, charged with identifying extra-hazardous employers, has developed
a formula for determining whether an employer is extra-hazardous. See 28 Tex. Admin. Code
§ 164.1 (West 1996). The formula essentially compares the employer's actual injury frequency
with the frequency expected in the employer's line of work; if the ratio of actual to expected
injuries exceeds a pre-determined threshold ratio, the employer is designated extra-hazardous. 
See id. § 164.1(c).

 When a fatality is involved, the actual injury frequency is multiplied by a "fatality
index," which substantially enlarges the actual injury frequency and almost invariably results in
an extra-hazardous designation. See 17 Tex. Reg. 7906 (1993). (2) The Commission chose to
assign fatalities more weight under the theory that each fatality represents a significant number
of undetected minor injuries and near-misses. Thus, according to the Commission, the fatality
index accounts for the probable frequency of undetected injuries attributable to the employer. 
However, a fatality caused by homicide, suicide, or disease unrelated to employment is excluded
from consideration; fatalities involving third-party vehicle accidents, common carrier accidents,
or unforeseeable acts of nature are considered as mere injuries, and the fatality index is not
invoked. 28 Tex. Admin. Code § 164.14 (West 1996). Further, an employer designated extra-hazardous because of a fatality may seek to have the designation removed on the grounds that the
fatality occurred because of factors beyond the employer's control. See Tex. Lab. Code Ann. §
411.0415(a)(1) (West 1996).

 Once the Division designates an employer as extra-hazardous, it must notify the
employer, reciting the facts leading to the designation and must give notice to the employer's
insurance company of this designation. Tex. Lab. Code Ann. § 411.042 (West 1996); 28 Tex.
Admin. Code § 164.2(b)(2) (West 1996). If the employer's records conflict with the facts forming
the basis of the designation, the employer can within ten days of the notice request review of the
designation by the Division. 28 Tex. Admin. Code § 164.2(b)(4) (West 1996). Additionally, an
employer can request a full hearing before an administrative law judge to contest the Division's
findings leading to the designation. Tex. Lab. Code Ann. § 411.049 (West 1996); 28 Tex.
Admin. Code § 164.2(b)(5) (West 1996); see also Tex. Gov't Code Ann. § 2001.058 (West
1996).

 If an employer does not successfully contest the extra-hazardous designation, the
employer must undergo a workplace safety consultation with a consultant approved by the
Division. Tex. Lab. Code Ann. § 411.043(a) (West 1996); 28 Tex. Admin. Code § 164.3(a); see
also 28 Tex. Admin. Code § 164.9 (West 1996). The consultant is required to inspect the
employer's job site for workplace hazards, and to complete a Hazard Survey Report form
describing any hazardous practices or conditions. The form instructs the consultant to identify
hazards by reference to codified workplace regulations, including regulations enacted under the
OSH Act. Thus, if during the inspection the consultant observes a hazard resulting from a
violation of an OSH Act regulation, he or she must describe the hazard and list the Code of
Federal Regulations citation to the violated regulation. Finally, the consultant must include on
the report recommendations for controlling the identified workplace hazards. 28 Tex. Admin.
Code § 164.3(d) (West 1996).

 Following the inspection and completion of the Workplace Survey Report, the
consultant and employer must formulate an "accident prevention plan" designed to correct the
identified safety violations. Tex. Lab. Code Ann. § 411.043(c) (West 1996); 28 Tex. Admin.
Code § 164.4(a) (West 1996). The plan must be consistent with established federal codes and
standards. (3) 28 Tex. Admin. Code § 164.4(a) (West 1996). Failure to bring the workplace into
compliance with the appropriate safety regulation constitutes a Class B administrative violation;
an employer commits a separate violation for each day of non-compliance. Tex. Labor Code §
411.046 (West 1996). Each violation is punishable by a fine of up to $5,000. Id. § 415.022.

 Between six and nine months after the formulation of the accident prevention plan,
the safety consultant conducts a follow-up inspection of the workplace to determine compliance
with the plan. Tex. Lab. Code Ann. § 411.045 (West 1996); 28 Tex. Admin. Code § 164.5
(West 1996). Notice of the compliance determination is provided to the employer and the
employer's insurance company. 28 Tex. Admin. Code § 164.6(a) (West 1996). If the employer
has complied with the plan or has implemented other acceptable measures to correct the safety
violations, the employer's extra-hazardous status is removed. Tex. Lab. Code Ann. § 411.045(b);
28 Tex. Admin. Code 164.7(a) (West 1996). If the employer has complied with the plan but
continues to exceed the reasonably expected injury frequency in the employer's business, the
employer is placed on "monitoring status" for six months, during which the division monitors
injury frequency and may impose additional accident prevention measures. 28 Tex. Admin. Code
§ 164.7(b), (c) (West 1996). If the inspection reveals failure to implement the plan or alternative
corrective measures, the employer remains on extra-hazardous status and is required to submit
progress reports to the Division every sixty days indicating steps being taken towards remedying
the existing hazards. 28 Tex. Admin. Code § 164.8 (West 1996).



The Ben Robinson Company

 In 1993, the Division identified the Company as an extra-hazardous employer based
solely on Gerald Robinson's fatal injury. Jerry Robinson invoked his right to a hearing and
challenged the designation, alleging that the accident was caused by circumstances beyond his
control. The hearing officer disagreed, and in a March 1994 order designated the Company as
extra-hazardous. Two weeks later, the Company filed suit in district court, attacking the order
on the same grounds. The suit did not suspend the Company's obligations under the Program,
and remained pending for the duration of the Company's extra-hazardous designation.

 As required by statute, Jerry Robinson obtained a safety consultation in April 1994. 
During the workplace inspection the safety consultant observed six violations of OSH Act
regulations, and noted them on the Hazard Survey Report. The consultant identified an additional
workplace hazard, and also determined that the Company's recordkeeping on workplace safety
matters was inadequate. Jerry Robinson lodged a protest to the Accident Prevention Plan,
asserting that the Commission had no authority to force compliance with it because the OSH Act
preempted the entire Program. He stated that he would nonetheless comply to avoid assessment
of administrative penalties. Jerry Robinson implemented measures to correct the identified
workplace hazards; at the advice of the safety consultant he began maintaining an "OSHA Form
200" to address the recordkeeping deficiencies. (4) The Company reported no injuries during the
following six months, and in December 1994 the Commission removed the Company's extra-hazardous status.

 In September 1994, the Company filed an amended petition in district court,
seeking a declaratory judgment that the Program was preempted by the OSH Act. The Company
also sought recovery of its costs and attorney's fees. See Tex. Civ. Prac. & Rem. Code § 37.009
(West 1986). In its modified opinion on summary judgment the trial court determined that while
the OSH Act generally preempted state workplace safety regulation, the Program fell within a
savings clause of the OSH Act and was therefore not preempted. In its final judgment, the trial
court denied the request for declaratory judgment, as well as all other relief sought by the
Company. The Company appealed the judgment to this Court, asserting in two points of error
that the Program does not fall within the savings clause of the OSH Act and is therefore
preempted. In its third point of error, the Company alleges that the trial court erred in failing to
award its attorney's fees and costs.



The Occupational Safety and Health Act

 Congress enacted the Occupational Safety and Health Act of 1970 "to assure so far
as possible every working man and woman in the Nation safe and healthful working conditions
and to preserve our human resources . . . ." 29 U.S.C. § 651(b) (1982). To achieve this
purpose, the Act provides for the development and promulgation of occupational safety and health
standards, as well as an inspection program to effectively enforce these standards. See id.
§ 651(b)(3), (9), (10).

 With the OSH Act, the federal government entered into a regulatory field
traditionally occupied by the States. Gade v. National Solid Wastes, 505 U.S. , 120 L. Ed. 2d
73, 83 (1992); see also Medtronic, Inc. v. Lohr, U.S. , 64 U.S.L.W. 4625 (1996). 
However, Congress allowed for continued state regulation in those areas for which no federal
workplace safety and health standards were in effect. 29 U.S.C. § 667(a) (1982). Congress also
preserved for the States the option of entirely displacing federal authority in favor of state
regulation:



Any State which, at any time, desires to assume responsibility for the development
and enforcement therein of occupational safety and health standards relating to any
occupational safety or health issue with respect to which a Federal standard has
been promulgated under section 655 of this title shall submit a State plan for the
development of such standards and their enforcement.



29 U.S.C. § 667(b) (1982).

 A majority of the Supreme Court agreed that by enacting this provision, Congress
sought to ensure that employers and employees would be subject to only one set of workplace
regulations, be it federal or state. See Gade, 120 L. Ed. 2d at 85, 94. The Court thus held that
the Act preempted nonapproved state regulation of occupational safety and health issues for which
a federal standard is in place. Id. at 84 (plurality opinion), 93 (Scalia, J. concurring).

 The Commission contends that despite this holding, the OSH Act does not preempt
the Program. First, the Commission claims that the Program does not actually regulate workplace
safety, but instead serves only as an accident prevention plan. The Commission thus asserts that
because the OSH Act does not provide a "standard" for an accident prevention plan, the Program
is saved from preemption under section 667(a). See 29 U.S.C. § 667(a) We disagree.

 As part of the safety consultation, the consultant is required to identify workplace
hazards and reference them by existing federal standards, including standards promulgated under
the OSH Act. See 28 Tex. Admin. Code § 164.4 (West 1996). In effect, this means that the
consultant inspects the workplace for violation of, among other federal workplace regulations,
OSH Act standards. Once the consultant determines that a workplace condition violates an OSH
Act standard, the employer is required to correct the violation within six to nine months; failure
to do so subjects the employer to penalties of up to $5000 per day. See Tex. Lab. Code Ann. §§
411.046; 415.022 (West 1996). In short, the Program holds the power to fine employers $5000
per day for OSH Act violations.

 The Program's overarching purpose of assuring workplace safety does not change
the fact that it regulates workplace safety issues already addressed by OSH Act regulations. 
Indeed, the OSH Act shares the Program's prophylactic purpose of assuring every person "safe
and healthful working conditions" and preserving human resources. See 29 U.S.C. § 651(b)
(1982). Like the Program, the OSH Act seeks to prevent future injuries by securing workplace safety. And like the OSH Act, the Program forces compliance with OSH Act standards to
accomplish this purpose. As the Supreme Court observed, Congress condemned this duplicative
regulation by enacting section 667(b) of the OSH Act. We accordingly hold that section 667(a)
of the OSH Act does not save the Program from preemption.

 The Commission next contends that the Program is saved from preemption by
section 653(b)(4) of the OSH Act, which provides:



Nothing in this chapter shall be construed to supersede or in any manner affect any
workman's compensation law or to enlarge or diminish or affect in any other
manner the common law or statutory rights, duties, or liabilities of employers and
employees under any law with respect to injuries, diseases, or death of employees
arising out of, or in the course of, employment.



29 U.S.C. § 653(b)(4) (1982). The Commission urges a broad reading of this savings clause,
asserting that it shields from preemption any law that is closely related to a state's workers'
compensation scheme. Under this broad reading the Program would be saved from preemption
because it is integral to the economic viability of the state's workers' compensation law. The
Commission asserts that by reducing workplace injuries, the Program will have the effect of
lowering workers' compensation premiums, which in turn will make participation in the workers'
compensation system affordable for more employers. This broader participation in turn sustains
the economic viability of the system. The district court adopted this rationale in rendering
judgment in favor of the Commission.

 The Company interprets the savings clause more narrowly, claiming that it saves
from preemption only those laws directly related to compensation of workers. The Company
observes that the Program does not affect the award or amount of compensation in a given case,
but instead focuses prospectively on accident prevention and safety. Accordingly, the Company
asserts, the Program falls outside the scope of the section 653(b)(4) savings provision.

 Under the Commission's broad interpretation of the savings clause, any state
workplace regulatory scheme which also had a beneficial effect on the state workers'
compensation system would always be saved from preemption. We believe this interpretation
proves too much. Imposing state workplace safety standards will always benefit the workers'
compensation system by improving job safety and consequently reducing disability payments. 
Indeed, Congress envisioned that imposing OSH Act standards would bring about this very effect
of reducing disability compensation payments. See 29 U.S.C. § 651(a) (1982). Against the
backdrop of this congressional intention to reduce disability payments by imposing workplace
safety regulations, the Commission's view of section 653(b)(4) would virtually nullify the
preemptive intent behind the OSH Act's section 667(b). See 29 U.S.C. § 667(b); Gade, 120 L.
Ed. 2d at 84, 93. We do not believe Congress intended that duplicative state regulations should
be saved from preemption by virtue of an effect on workers' compensation already contemplated
by the OSH Act itself. We therefore hold that the Program's beneficial effect on the Texas
workers' compensation system does not place the Program within the protection of section
653(b)(4). See 29 U.S.C. § 653(b)(4) (1982).

 Our holding is bolstered by the federal appellate courts' determination that section
653(b)(4) sought only to prevent injured workers from circumventing workers' compensation by
claiming a private cause of action based on the OSH Act. See Pratico v. Portland Terminal Co.,
783 F.2d 255, 265 (1st Cir. 1985). As the First Circuit observed in Pratico:



[T]he Fifth Circuit has found, along with every other court that has considered this
issue, that § 653(b)(4) was designed to ensure that OSHA did not permit injured
employees to bypass applicable state worker's compensation schemes through a
private action in federal court . . . .


 

Id. at 265 (citing Jeter v. St. Regis Paper Co., 507 S.W.2d 973 (5th Cir. 1975)). The Pratico
court traced the legislative history of this provision in discerning its purpose:




The legislative history of § 653(b)(4) shows that the intent of the provision was
merely to ensure that OSHA was not read to create a private right of action for
injured workers which would allow them to bypass the otherwise exclusive remedy
of worker's compensation. This can be seen in a letter from the Solicitor of Labor
to the Chairman of the House Subcommittee on Labor explaining the operation of
the provision:


Dear Mr. Chairman: This is in response to your recent request for
information upon which to base a reply to Mr. James E. Bailey,
Legislative Counsel, American Society of Insurance Management,
Inc.


 In his letter, Mr. Bailey expresses concern that under proposed
legislation dealing with occupational health and safety "an injured
employee could claim violation of the requirements of the
legislation and thus bypass the applicable state workmen's
compensation benefits through an action in the Federal courts."


 The provisions of S.2788, the Administration' proposed
Occupational Safety and Health Act of 1969 would in no way affect
the present status of the law with regard to workmen's
compensation legislation or private tort actions.



Id. at 266 (citations to legislative history omitted). The federal appellate courts' interpretation of
section 653(b)(4) amounts to a clear rejection of the broad reading advocated by the Commission.

 As a result of the holding in Gade, regulation of workplace hazards by a state is
permitted in only two limited instances. First, a state may enact its own workplace regulatory
scheme under the authority of section 667(b). See 29 U.S.C. § 667(b) (1982). Second, a state
may regulate workplace safety issues which are not already addressed by an existing federal
standard. See id. § 667(a). A state without an approved regulatory plan may not, however,
regulate workplace safety issues for which a federal standard is already in effect. Because the
Extra-Hazardous Employer Program regulates workplace safety issues already addressed by the
OSH Act, and because the Program does not fall within the savings clause of section 653(b)(4),
we hold that the Program as currently administered is preempted by the OSH Act. See Gade, 120
L. Ed. 2d at 84, 93. We accordingly sustain the Company's first and second points of error.



Costs and Attorney's Fees

 In its third point of error the Company claims entitlement to costs and attorney's
fees. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1986). The supreme court has held
that the Declaratory Judgment Act waives governmental immunity for the award of attorney's
fees. Texas Educ. Agency v. Leeper, 893 S.W.2d 432, 446; see also Elgin Bank v. Travis County,
906 S.W.2d 120, 124 (Tex. App.--Austin 1995, writ denied). In light of our disposition of points
of error one and two, we remand to the trial court the issue of attorney's fees and costs. See Elgin
Bank, 906 S.W.2d at 124.



CONCLUSION


 We render judgment that to the extent the Program addresses workplace safety
issues for which an OSH Act standard is in effect, the Program is preempted by the OSH Act. 
We accordingly reverse the trial court's summary judgment in favor of the Commission, and
remand the issue of costs and attorney's fees.



 

 Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: July 31, 1996

Publish

1.   Commission records pertaining to the Company's extra-hazardous designation may
be subject to disclosure under the Open Records Act. See 28 Tex. Admin. Code §
164.2(b)(5) (West 1996).
2.   Since the Company's extra-hazardous designation, the Division has replaced the
fatality index with a new formula to account for workplace fatalities.
3.   Failure to conform the Hazard Survey Report and Accident Prevention Plan to
federal workplace safety and health standards constitutes grounds for removing the
consultant from the Commission's list of approved professional safety consultants. See 28
Tex. Admin. Code § 164.10 (West 1996).
4.   As an employer with less than ten employees, the Company was not required by
federal law to maintain an OSHA Form 200. See 29 C.F.R. § 1904.15 (West 1995).