## MILTON L. EPPSTEIN v. STATE OF TEXAS.

### No. 2350.    Decided February 7, 1912.

**1.—Occupation Tax—Wholesale Liquor Dealer.**

The tax required to be paid quarterly by a wholesale liquor dealer, under section 11 of the Act of May 16, 1907, Laws, 30th Leg., p. 485, 1st Called Session, is one-half of one per cent of the amount of his gross sales during the quarter as shown by the report required by such law, whether the same are collected or uncollected. (Pp. 37-40.)

**2.—Same—Statutory Construction—Receipts.**

The quarterly report of sales required to be made by a wholesale liquor dealer by section 11 of the Act of May 16, 1907, must include the entire amount of his sales whether collected or uncollected, but is not required to show the amounts of each respectively. The "gross receipts" on which the tax of one-fourth of one per cent is based include sales on promises or obligation to pay, as well as those for cash collected during the quarter. (P. 39.)

**3.—Same.**

Where an Act is fairly susceptible of two constructions, one of which would render it inoperative, and the other give it force and effect, the latter should be adopted. Limiting the words "Gross receipts" in section 11 of the Act of May 16, 1907, to sales on which the price has been collected would render the Act ineffectual, since the dealer is not required to report these separately from those uncollected; and, further, by making all sales payable

after the quarter in which they were sold, he could, under that construction, avoid all taxation. (P. 39.)

Error to the Court of Civil Appeals, Third District, in an appeal from Travis County.

Eppstein obtained writ of error on the affirmance, on his appeal of a judgment obtained against him by the State. .

*I. M. Standifer, Wm. L. Evans,* and *A. G. Wheeler,* for plaintiff in error.—If there was any doubt about the intent of the Legislature having been to levy an occupation tax upon the gross receipts of the businesses named in Section 11, for each quarter based upon the report for the preceding quarter, it would be removed by occupation taxes levied upon the businesses named in Sections 12, 13 and 9, upon the first two of which it is upon the gross receipts, and in the last, upon the gross receipts and amounts uncollected from sales.

The statute law of Texas provides that the ordinary signification shall govern in the construction of all civil statutory enactments, except words of art or words connected with a particular trade or subject matter, and when such rule of construction is applied, no other meaning can be given to the act in question than that the occupation tax of one-half of one per cent was levied upon the gross receipts of money derived from sales made during the preceding quarter. Definitions of Receipt: Webster's Dictionary; Crabb's Synonyms; 61 Pac., 96; Anderson's Dictionary; Wright's Admrs. v. Wilkerson, 41 Ala., 267; Hill v. Nelson, N. Y., 1 Dem. Sur., 356-361; People v. Savings Union, 13 Pac., 498; Philadelphia & S. M. S. S. v. Commonwealth, 104 Pa. St., 115; Railway Co. v. Commonwealth, 15 Wall., 168.

By keeping in view at all times the old law, the evil and the remedy, does not operate to put a different construction than that the occupation tax of one-half of one per cent was levied upon the gross receipts of money derived from sales made during each quarter, based upon the report for the preceding. Supplement to Sayles' Texas Statutes, 1908-1910, pp. 409-418; Revised Statutes, Art. 3268; 36 Cyc. 1189; Fire Assn. v. Love, 101 Texas, 380; United States v. Isham, 17 Wall., 496; Murray v. State, 57 Am. Reg., 623; Cooley on Taxation, 3rd ed., pp. 449 to 465; Turner v. Cross, 83 Texas, 218; Thompson v. Buckley, 1 Texas, 35.

- *Jewel P. Lightfoot,* Attorney General, and *James D. Walthall* and *John W. Brady,* assistants, for defendants in error.—The trial court properly rendered judgment against appellant for the amount of the taxes claimed by the State in its petition, because section 11, chapter 18, Acts of the Thirtieth Legislature, clearly imposed an occupation tax equal to one-half of one per cent of the total sales, collected and uncollected, made by appellant during each quarter preceding the quarter in which the report was required by law to be filed by appellant with the Comptroller of Public Accounts.

To give section 11 the construction contended for by appellant would be to practically nullify its provisions by enabling appellant

to entirely evade and defeat the tax imposed, and the court should so construe said section as to carry out the legislative intention and to render said section operative and effective. Chapter 18, Acts of 1907, page 479; Black on Interpretation of Laws, pp. 106, 326-331; Cooley on Taxation, pp. 449-465; Lewis's Sutherland on Statutory Const., secs. 535-536; Mills v. Thurston, 16 Wash., 378; State v. Taylor, 35 N. J. L., 134; Philadelphia v. Ridge Avenue Ry. Co., 122 Pa. St., 190; Thompson v. State, 20 Ala., 54; Hubbard v. Branard, 35 Conn., 563; Rein v. Lane, Law R. 2 Q. B., 144, 150; Lord Foley v. Comrs., 3rd Exch., 263-268; Campbell, Receiver v. Wiggins, 85 Texas, 425; Morris v. Mason, 68 Texas, 702; Sayles' v. Calif. Powder Works, 7 Colo., 285; Cornwall v. Todd, 38 Conn., 443.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This is a suit by the State of Texas against Milton L. Eppstein to recover the sum of $2012.15 principal, alleged to be due the State by defendant for occupation taxes as a wholesale dealer and distributor of spirituous, vinous and malt liquors, capable of producing intoxication, as provided for by Section 11 of Chapter XVIII, of the Acts of the 30th Legislature, 1907. It was alleged by the State "that the defendant, as such wholesale dealer, sold within the State of Texas from July 1, 1907, up to and including October 1, 1909, spirituous, vinous and malt liquors, capable of producing intoxication, amounting to the total sum of $402,429.96, of which amount there was sold for cash $156,882.14, the remainder of said sales, amounting to $245,547.82 being sold on credit," and that by reason of such sales the defendant became and was indebted to the State of Texas in the sum of one-half of one per cent of said gross sales, collected and uncollected, amounting to the principal sum sued for on which interest was claimed at 6 per cent on the amount due and unpaid each quarter, respectively, from the due date and a penalty of ten per cent.

The defendant answered by general demurrer and special plea in effect admitting all the material allegations of the State's petition except his liability to pay the tax of one-half of one per cent on such portion of his gross sales, as shown by his several reports to have been uncollected, and that he had at the time such tax became due tendered payment to the proper officer of said tax on such portion of his sales as had been collected, and denying his liability under the statute to pay the tax on such uncollected sales.

The cause was tried by the court without a jury and judgment was rendered for the State for the principal amount sued for together with the penalty of ten per cent.

No issue of fact was presented and the sole question of law is whether the wholesale dealer in intoxicating liquors is required under the Act of 1907, Section 11, 30th Legislature, to pay the occupation tax of one-half of one per cent on the gross sales of his business in this State, whether collected or uncollected, during the quarter for which he is to pay, or whether he is required only to pay on such amount of such gross sales as he may collect during the quarter.

The issue is determinable upon the proper construction to be given

the legislative act levying the occupation tax in question, Section 11 of Chapter XVIII of the 30th Legislature, which is as follows:

"Each and every individual company, corporation or association created by the laws of this State or any other State, who shall engage in his own name or in the name of others, or in the name of its representatives or agents in this State in the business of a wholesale dealer or a wholesale distributor of spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, shall on or before the first day of July, 1907, and quarterly thereafter, make a report to the Comptroller of Public Accounts, under oath of the individual, or of the president, treasurer or superintendent of such company, corporation or association, showing the gross amount collected and uncollected from any and all sales made within this State of any of said articles during the quarter next preceding. Said individuals, companies, corporations and associations, at the time of making said report shall pay to the Treasurer of the State of Texas, an occupation tax for the quarter beginning on said date, equal to one-half of one per cent of said gross receipts from said sale as shown by said reports."

From a careful reading of the above section we conclude that those engaged in the wholesale or wholesale distribution of intoxicating liquors are required to make quarterly reports of the gross amount of any and all sales of such liquors, whether sold for cash or on credit, for the purpose of forming a basis for the aggregate amount of the occupation tax to be paid by such dealer or distributor during each quarter. The statute does not require separate statements or items showing the gross amount collected and the gross amount uncollected from any and all sales made, and is not, as we think, susceptible of such construction. It appears perfectly clear to us from the wording of the section that it was intended that such report should show the gross amount of sales made during any quarter and that any and all sales should be reported, whether collected or uncollected, as constituting the gross amount of sales. That portion of the section which levies the tax of one-half of one per cent places same upon "said gross receipts from said sales," showing evidently that it was meant to place the tax on the gross receipts the ascertainment of which is provided for in the previous lines as "the gross amount collected and uncollected from any and all sales." No significance arises from the use of the word "receipts" as indicating cash in the connection in which it is used. So far as we know or are able to ascertain, the word "receipts" when used in a commercial sense, as in this case, is commonly understood to mean the taking in or receiving obligations or promises to pay, whether written or verbal, as well as cash. When applied to receipts an obligation to pay is as tangible as money. In the sense and in the connection the words, "said gross receipts from said sales," are used in the section under discussion, they clearly mean the volume of business done, the quantum of obligations and money received out of any and all sales of the articles the subject of the occupation tax.

If any doubt existed as to the meaning of the words, "gross

receipts," independent of their use in connection with any other portion of the section in which they occur, such doubt is dispelled when notice is taken that the tax is placed upon "said gross receipts from said sales," meaning as defined in the previous lines, the gross amount of said sales. Whatever might be conceived to be the meaning of the word "receipts" in any other connection, or in the general acceptation of its meaning, in this instance the Legislature has given to it the signification of the volume of business done by the wholesale dealer or distributor, as shown by the report exacted. No question can be raised, we conceive, as to the authority of the lawmaking power to give this meaning to such word.

As we interpret the language of this section, to give the meaning to the word "receipts," as contended for by plaintiff in error, would render the section of the law inoperative, for the reason that the wholesale dealer or distributor of intoxicating liquors could not be required to furnish the data upon which to base the tax, since the report required of him need only show the aggregate amount of sales including those collected and uncollected. Such a holding would thwart the legislative intent.

In this connection it will be proper to mention the contention of the State, that if such dealers are required by Section 11 to pay the tax only on cash receipts from sales the purpose of the law would be helpless to reach any sales of such articles as were made on a credit extending beyond the quarter for which the tax is required to be paid, and thus the section would become ineffectual to produce one dollar of revenue under such circumstances. If such effect is given this section it is possible for any such dealer to so conduct his business on a credit as to render himself not liable for the tax, no matter what might be the volume of business, and this might be done without any intentional evasion of the law and without perpetrating a fraud on the State. Besides this it would present the anomaly of making it possible for two such competitive dealers or distributors in the same locality, side by side conducting the same volume of business, one receiving cash for his sales and paying a tax of one-half of one per cent on the gross amount of such sales, and the other giving credit not exceeding ninety days and less as the quarter advances, and paying to the State not one dollar of occupation tax. However forceful and subtle may be the argument that leads the effect of the act to such a conclusion cannot receive sanction by this court. These conclusions call for the application of that indisputable rule of statutory construction that where an act is fairly susceptible of two constructions, one of which would render it inoperative, and the other give it force and effect, the latter should be adopted. (Black on Interpretation of Law, p. 316, sec. 119.)

We are referred by counsel for plaintiff in error in able and comprehensive briefs and arguments to various rules of statutory construction. We have concluded, however, that this is not a case where artificial, arbitrary or subtle rules of statutory construction are applicable. Nor is it a case where technical or conventional meanings of words are in any great degree helpful, for the Legislature has exercised its authority to color the words used with a particular and

definite meaning and such vehicles of thought so laden must bear to their destination the legislative intent thus colored.

We doubt whether a reference to other portions of the Act of the 30th Legislature of which section 11 is a part, throws any light upon the meaning intended by the Legislature in its use of the words "gross receipts" in section 11, for the reason that in section 9 of the Act the meaning given those words seems to indicate only amounts collected, while it is equally clear that in section 10 the same meaning is given the same words when applied to amounts collected and uncollected.

We have given the question due consideration and have concluded that the Legislature intended and so expressed such intent to require wholesale dealers or distributors of intoxicating liquors to pay one-half of one per cent on the gross amount of their sales of such articles, whether collected or uncollected, and, therefore, we affirm the judgment of the Court of Civil Appeals.

*Ordered affirmed.*