

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

April 17, 1986

Honorable Bob Bullock
Comptroller of Public Accounts
L.B.J. Building
Austin, Texas   78711

Opinion No.  JM-478

Re:  Application of the franchise
tax to "oil exchange" contracts and
"oil matching buy-sell" contracts

Dear Mr. Bullock:

You ask about the meaning of "gross receipts" for purposes of calculating the franchise tax.

Texas imposes a franchise tax on every corporation that does business in Texas or that is chartered or authorized to do business in Texas. Tax Code §171.001. In most cases, the amount of franchise tax a corporation must pay is based on the portion of the corporation's taxable capital that is allocable to Texas. Tax Code §171.002. To determine the portion of a corporation's taxable capital allocable to Texas, "the corporation's total taxable capital [is] multiplied by a fraction, the numerator of which is the corporation's gross receipts from business done in this state and the denominator of which is the corporation's gross receipts from its entire business." Tax Code §171.106. Gross receipts from business done in Texas is determined as follows:

> The gross receipts of a corporation from its business done in this state is the sum of the corporation's receipts from:

> (1)  each sale of tangible personal property if the property is delivered or shipped to a buyer in this state regardless of the FCB point or another condition of the sale, and each sale of tangible personal property shipped from this state to a purchaser in another state in which the seller is not subject to taxation;

> (2)  each service performed in this state;

> (3)  each rental of property situated in this state;

(4) each royalty for the use of a patent or copyright in this state; and

(5) other business done in this state.

Tax Code §171.103. Gross receipts from an entire business is determined by a similar formula:

(a) The gross receipts of a corporation from its entire business is the sum of the corporation's receipts from:

(1) each sale of the corporation's tangible personal property;

(2) each service, rental, or royalty; and

(3) other business.

Tax Code §171.105(a).

Your question is whether proceeds from "oil exchange" contracts and proceeds from "oil matching buy-sell" contracts are "gross receipts" for purposes of sections 171.103 and 171.105 of the Tax Code.

You describe "oil exchange" contracts as follows:

Oil exchanges typically occur when an oil company needs a certain grade or type of oil in a location where they have a refinery or customer. The company will find another oil company that has the product it needs and [will agree] to exchange the product barrel-for-barrel. A dollar value is assigned to the oil exchanged, and the difference is periodically paid in cash.

You describe "oil matching buy-sell" contracts as follows:

Under an 'oil matching buy-sell' contract, one oil company will agree to sell a certain amount of oil to a second company. The second company, correspondingly, will agree to sell the first company a like amount of oil. These agreements are entered into for the same reasons as 'oil exchange' agreements.

You tell us that since 1972 you have not included oil received in an exchange as a part of "gross receipts" for franchise tax purposes,

but that you have always included amounts received under "oil matching buy-sell" contracts as part of "gross receipts." Recently several companies have complained about your treating exchanges differently from sales made pursuant to "oil matching buy-sell" contracts. Consequently, you ask how you should treat proceeds from each of these types of transactions.

We think that you have been treating cash proceeds received by a corporation pursuant to an "oil matching buy-sell" agreement properly for purposes of sections 171.103 and 171.105 of the Tax Code. For purposes of both section 171.103 and section 171.105, "gross receipts" are "the sum of the corporation's receipts" from various business activities, including the sale of tangible personal property. Oil that has been recovered is tangible personal property. Sabine Production Co. v. Frost National Bank of San Antonio, 596 S.W.2d 271 (Tex. Civ. App. - Corpus Christi 1980, no writ). There can be no question but that cash proceeds from the sale of oil are receipts from the sale of tangible personal property and includable in "gross receipts" under sections 171.103 and 171.105. You suggest and we perceive no basis for excluding cash proceeds from receipts under section 171.103 or section 171.105 simply because the seller corporation is selling pursuant to a contract whereby each party is selling property to the other. If the legislature wanted to exclude proceeds from this type of bilateral sale from gross receipts, it could have done so expressly. Therefore, you have acted properly by including cash received under "oil matching buy-sell" contracts in gross receipts.

An "oil exchange" agreement and an "oil matching buy-sell" agreement contemplate essentially the same transaction. The exchange simply eliminates the step in which each party pays cash to the other. Apparently, your office has concluded in the past, however, that non-cash property a corporation receives in exchange for its tangible personal property does not constitute "receipts" for purposes of sections 171.103 and 171.105. In other words, your office has apparently been interpreting the word "receipts" to mean cash receipts only. Webster's Ninth New Collegiate Dictionary defines "receipts" as "something received." (See definition of "receipt.") Although "receipts" might mean cash receipts in certain contexts, we do not think it can be read so narrowly in this context.

The Texas Legislature has expressly limited the definition of "receipts" in at least two instances in which it intended to limit the kind of proceeds that were to be included in a particular calculation of receipts. First, in former article 3926, V.T.C.S., the legislature used the term "actual cash receipts" in setting out the commission that executors, administrators, or guardians could charge on amounts they received. Acts 1876, at 284, repealed by Acts 1971, 62nd Leg., ch. 714, §1, at 2351. Second, for purposes of the Limited Sales,

Excise, and Use Tax Act, the basic definition of "receipts" is "the total amount for which a taxable item is sold, leased, or rented." Tax Code §151.007(a). However, the legislature expressly excluded a number of items from the definition of "receipts," including "the value of tangible personal property taken by a seller in trade as all or part of the consideration for a sale of a taxable item." Tax Code §151.007(c)(6). In sections 171.003 and 171.005, in contrast, the legislature did not limit the scope of the word "receipts" in any way.

Also, in Eppstein v. State, 143 S.W. 144 (Tex. 1912), the Supreme Court considered whether "gross receipts" from sales for purposes of an occupation tax statute included only cash received during a certain period or whether it also included accounts payable accruing during that period. The court concluded the gross receipts included all sales, whether for cash or on credit. In so holding the court wrote, "[n]o significance arises from the use of the word 'receipts' as indicating cash in the connection in which it is used." 143 S.W. at 146. The policy reasons for including accounts receivable in receipts for purposes of the tax in question in Eppstein are probably not applicable in this case. It is significant, though, that the court found that the word "receipts" was not synonymous with "cash receipts."

Finally, because the receipts in question here are receipts from sales, we think it is instructive to examine how the courts have interpreted the word "sale." In Ullmann v. Land, 84 S.W. 294, 295-96 (Tex. Civ. App. 1904, writ dism'd), the court adopted the definition of "sale" set out in Tiedeman on Sales:

> Although it has been sometimes held that the sale must be a transfer for money, and that every other transfer is an exchange or barter, the better opinion is that the transaction is still a sale, although the transfer is made for something else than money, provided each article is transferred at an agreed or the market value, so that the one thing is received in payment of the price of the other.

In McKinney v. City of Abilene, 250 S.W.2d 924, 925 (Tex. Civ. App. - Eastland 1952, writ ref'd n.r.e.), the court applied an even broader definition of sales:

> Although there is a technical distinction between a sale and an exchange of property, a sale in its broadest sense comprehends any transfer of property from one person to another for a valuable consideration.

If a sale includes an exchange of property, then the property received is necessarily "receipts" from a sale.

Therefore, absent any legislative expression of contrary intent, we must conclude that you should include the property received in exchange for a corporation's property as "receipts" for purposes of sections 171.103 and 171.105 of the Tax Code.

### S U M M A R Y

The Comptroller of Public Accounts must include as "receipts" for purposes of sections 171.103 and 171.105 of the Tax Code property received by a corporation in exchange for tangible personal property of the corporation.

Very truly your,

J I M    M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General