TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00010-CV






Glenn McMillan, Appellant




v.




Texas Natural Resources Conservation Commission; Northwest Harris County


Municipal Utility District No. 24; and KWT Properties, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 96-15219, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING 







 Glenn McMillan appeals from a district-court judgment that affirms a final order
of the Texas Natural Resources Conservation Commission (the "Commission") in a contested
case. We will affirm the judgment.


THE CONTROVERSY

 McMillan owns approximately forty acres of land within the boundaries of
Northwest Harris County Municipal Utility District No. 24 (the "District"). (1) Beginning in 1993,
the District imposed an annual standby fee (2) on "undeveloped property" within District boundaries. 
McMillan's property was excused from the fees during 1993 to 1995 pursuant to a negotiated
settlement between McMillan and the District.

 In 1995, the District applied (3) to the Commission for authority to impose standby
fees on McMillan's property in 1996, 1997, and 1998. (4) McMillan protested. An administrative
law judge ("ALJ") held hearings in August 1996 and recommended that the District receive the
requested authority. The Commission adopted the ALJ's recommendation and in October 1996
issued a final order approving the District's application. McMillan sued in district court for
judicial review of the order. (5) McMillan appeals now from a judgment affirming the order. See
Tex. Water Code Ann. § 5.355 (West 1988).

INTERPRETATION OF TERM "UNDEVELOPED PROPERTY"


 A statute and a Commission rule authorize the imposition of standby fees on
"undeveloped property." See Tex. Water Code Ann. § 49.231(a)(1) (West Supp. 1999); 30 Tex.
Admin. Code § 293.141(a) (1997). In his first point of error, McMillan contends that his property
is not "undeveloped property" within the statute and the rule, properly construed. See Tex. Water
Code Ann. § 49.231(a)(2)(A)-(C) (West Supp. 1999); 30 Tex. Admin. Code § 293.141(b) (1997).

 Section 49.231(a)(2) of the Water Code defines "undeveloped property" as


a tract, lot, or reserve in the district to which no potable water, sanitary sewer, or
drainage connections have been made for which:


(A) water, sanitary sewer, or drainage facilities and services are available; 


(B) water supply, wastewater treatment plant capacity, or drainage capacity
sufficient to serve the property is available; or


(C) major water supply lines, wastewater collection lines, or drainage facilities
with capacity sufficient to serve the property are available. 



Tex. Water Code § 49.231(a)(2)(A)-(C) (West Supp. 1999) (emphasis added).

 The Commission rule governing standby fees defines "undeveloped property" in
a similar manner:


Undeveloped property means a tract, lot, or reserve in the district to which no
water or wastewater connections have been made to serve the property utilizing
substantially the full amount of the capacity allocated to the property as shown in
the district's bond application or by written commitment and for which:


(1) water or wastewater facilities and services are available;


(2) water supply or wastewater treatment plant capacity sufficient to serve the
property is available; or


(3) major water supply lines or wastewater collection lines with capacity
sufficient to serve the property are available.



30 Tex. Admin. Code § 293.141(b)(1)-(3) (1997) (effective December 17, 1990 by 15 Tex. Reg.
6849 (1990)) (emphasis added).

 The statute defines "undeveloped property" solely in terms of whether facilities and
services are "available" to serve the property. If so, the property qualifies as "undeveloped
property" under the statute.

 The rule, on the other hand, adds important elements to the statutory definition of
"undeveloped property." These pertain to water and wastewater "connections" serving the
property. If no such connections have been made, or if the number of connections made does not
utilize "substantially the full amount of capacity allocated to the property as shown in the district's
bond application or by a written commitment," the property is "undeveloped property" under the
rule provided facilities and services are "available."

 No connections have been made to McMillan's property. He argues that the rule
imposes an essential procedural step before the District may classify a tract, lot, or reserve as
"undeveloped property," namely: (1) the District must first allocate to the tract, lot, or reserve
a specific water and wastewater capacity; and (2) the allocation of capacity must be made in a
bond application or a written commitment. (6) McMillan contends the record is devoid of evidence
that his property was allocated a specific capacity in a bond application or written commitment;
therefore, the record does not show that his property is "undeveloped property" for purposes of
the rule.

 The Commission and the District interpret the rule differently. They contend it
carries a broader and more general meaning. The rule does not require, in their view, that a
specific capacity be calculated and assigned to individual lots, tracts, or reserves of land. Instead,
the rule simply requires that unused facilities and services be sufficient to meet the expected
general demand for connections as estimated in bond-application documents.

 It is difficult to square the agency interpretation with the text of the rule. The text
equates the expression "allocated to the property" with the antecedent expression "a tract, lot, or
reserve in the district." The words do not naturally support, in ordinary usage, the meaning the
agency assigns to them. Nevertheless, the agency interpretation becomes a part of the rule itself
and represents the view of a regulatory body that must deal with the practicalities of administering
the rule. The meaning imputed by the agency is a technical meaning, apparently chosen to
accommodate the fact that District facilities are ordinarily constructed in phases over time; that
is to say, complete water and wastewater systems, sufficient to satisfy the demand in a completely
developed district, are seldom installed at one time so that they are available throughout the district
from the very beginning.

 The issue raised has not previously been before an appellate court so far as we are
able to determine and the rule, embodying the concept of a "connection," appears to have been
first enacted in 1990. We are cautioned to give "greater weight" to an agency's interpretation of
its own rule when the issue represents "the agency's initial attempt at interpreting and
implementing a new regulatory concept." 2B Sutherland Statutory Construction § 49.05 at 17
(1991). It does not appear that McMillan has acted in detrimental reliance on his contrary
interpretation of the rule; the issue is simply whether his property, as it has always existed, will
be subject to the standby fees for the years in question. In these circumstances, we are not
prepared to hold the Commission's interpretation of its rule is plainly erroneous or inconsistent
with the rule. See Texas Citrus Exch. v. Sharp, 955 S.W.2d 164, 169 (Tex. App.--Austin 1997,
no writ); see generally Peter Raven-Hansen, Regulatory Estoppel: When Agencies Break Their
Own "Laws," 64 Tex. L. Rev. 1 (1985).


AVAILABLE CAPACITY


 McMillan may still prevail on his first point of error if we determine the
Commission's interpretation of the term "available" was erroneous. Both the statute and the rule
incorporate the element of availability into the definition of "undeveloped property"--a tract, lot,
or reserve is "undeveloped" if: (1) it is not presently connected to District facilities, and (2)
District facilities are "available." The Commission and the District argue that availability is
synonymous with capacity currently available, albeit on a first-come, first-serve basis, (7) while
McMillan insists that such an interpretation is unreasonable and subverts the plain requirements
of the statute and the rule.

 Neither the statute nor the rule defines "available." (8) The ordinary meaning of
"available" is "capable of use for the accomplishment of a purpose." Webster's Third
International Dictionary 150 (Philip B. Gove ed., 1961); see also Black's Law Dictionary 135 (6th
ed. 1990) (defining "available" as "suitable, useable, accessible, obtainable, present or ready for
immediate use"). But the context indicates a specific, technical meaning was intended--a meaning
consistent with the fact that water and wastewater facilities are ordinarily constructed in phases
as development occurs over time, as opposed to being constructed to serve the entirety of the
District from the very beginning. See Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 273-74
(Tex. 1995); Eppstein v. State, 143 S.W. 144, 146 (Tex. 1912). This accounts for the discrepancy
between the projected utility demand at full District development of 5,015 equivalent family
connections (not including demand associated with undeveloped areas) and the estimated 2,257
water-plant and 328 waste-treatment connections currently available on a first-come, first-serve
basis.

 While there is not enough capacity available presently to service a fully-developed
District, it was shown that there is adequate capacity "present or ready for immediate use" in the
sense of meeting expected demands. Of course, if other property owners appropriated all
remaining connections before McMillan, it could not be said that capacity remained available. In
that case, no standby fee could lawfully be assessed. If the District did assess a standby fee when
no capacity was actually available, the Commission must direct that "such improperly collected
fees be refunded, together with interest thereon." 30 Tex. Admin. Code Ann. § 293.141(h)
(1997). Accordingly, we regard the Commission's interpretation of "available" as neither plainly
erroneous nor inconsistent with the relevant provisions of the statute and the rule. We overrule
McMillan's first point of error.


RES JUDICATA

 In his second point of error, McMillan argues the imposition of standby fees on
his property was barred by the doctrine of res judicata. The common-law doctrine of res
judicata declares:


[A] question of fact or law, distinctly put in issue and directly determined by a
court of competent jurisdiction as a ground of recovery or defense in a suit or
action between parties sui juris, is conclusively settled by the final judgment or
decree therein, so that it cannot be further litigated in a subsequent suit between the
same parties or their privies, whether the second suit be for the same or a different
cause of action. (9)



It is settled that the doctrine may apply by analogy to final decisions made by administrative
agencies in their adjudication of contested cases, as opposed to their other decisions and actions. 
See Friedrich Air Conditioning & Refrigeration Co. v. Bexar Appraisal Dist., 762 S.W.2d 763,
770 (Tex. App.--San Antonio 1988, no writ).

 In 1993, the District applied for authority to impose standby fees of approximately
$30,000 per year on McMillan's property. McMillan protested, and a settlement that excused his
property was negotiated with the District and the Commission. The terms of this settlement were
embodied in a Commission order dated December 17, 1993. The order incorporated by reference
an attachment that stated in part that "[t]he District has agreed to omit these five tracts from the
proposed standby fee to be levied for debt service based on plant capacity. On this basis, Staff
does not object to exempting these tracts from the proposed standby fee." (emphasis added).

 McMillan contends the 1993 order, by reference to the attachment, means that the
Commission determined that the District lacked in 1993 adequate capacity to serve McMillan's
property. He argues that this determination necessarily implies that his property was not
"undeveloped" in 1993. Since no bonds have been issued by the District since 1993, and therefore
no new capacity has been added, McMillan contends the 1993 order is determinative of the merits
of the present controversy. 

 Contrary to McMillan's contention, the Commission never "found" that the
exemption of McMillan's property was based on inadequate plant capacity. Finding of fact
number eight in the 1993 order states, "The District is authorized to adopt and impose standby
fees on the undeveloped property as agreed to by the parties to the proceeding. The agreed
standby fees, listed in Attachment A attached hereto and incorporated herein for all purposes, meet
all statutory and regulatory requirements." Section three of the order states, "The District shall
comply with the terms of the settlement agreement attached hereto as Attachment A and
incorporated into this Order for all purposes."

 Attachment A is a Commission interoffice memorandum. The amount of the
proposed standby fee for tracts determined to be "undeveloped" is listed in chart form in the
attachment. The contents of this chart are the "terms" that were incorporated in the 1993 order. 
The statement by the Commission staff in Attachment A, that it does not object to excusing
McMillan's tract from the proposed fee on the basis of plant capacity, cannot be considered a
"term" of the settlement agreement. Nothing in the actual order indicated whether a determination
of the status of the McMillan property had been made. The fact that McMillan's property was not
included in the list of "undeveloped" properties in the attachment is not the equivalent of a finding
of fact that his property was not "undeveloped." Without such an explicit finding by the
Commission, the 1993 order does not bar the standby fees imposed on McMillan's land by the
1996 order.

 Moreover, McMillan had no reasonable basis to believe that his rights concerning
the imposition of standby fees on his property became fixed in 1993. The Commission's authority
to levy fees is only effective in three-year increments. At the conclusion of the three-year period,
"[t]he imposition of the standby fee may be renewed for additional periods of not more than three
years each in the same manner provided in this section for initial approval of the standby fee." 
Tex. Water Code Ann. § 49.231(h) (West Supp. 1999). The approval process provides each
owner of undeveloped property an opportunity to be heard. A decision to bar the imposition of
standby fees on McMillan's property based on res judicata would not be consistent with the
requirements of the statute. The 1993 order does not bar subsequent adjudication of the same
subject matter because the adjudication is allowed by statute. See Sexton v. Mount Olivet Cemetery
Ass'c, 720 S.W.2d 129, 138 (Tex. App.--Austin 1986, writ ref'd n.r.e.); Al-Jazrawi v. Texas Bd.
of Land Surveying, 719 S.W.2d 670, 671 (Tex. App.--Austin 1986, no writ).

 We overrule McMillan's second point of error. 


CONSTITUTIONALITY OF STANDBY FEES

 In his third and final point of error, McMillan argues that the standby fees
authorized by Water Code section 49.231 and Texas Administrative Code section 293.141 are
unconstitutional. McMillan argues that the standby fee is a disguised tax that violates Article VIII, 
sections 1 and 20 of the Texas Constitution. Article VIII, section 1 states, "All real property . . .
in this state . . . shall be taxed in proportion to its value." Tex. Const. art. VIII, § 1. Article
VIII, section 20 states, "No property of any kind in this State shall ever be assessed for ad valorem
taxes at a greater value than its fair cash market value." Tex. Const. art. VIII, § 20. McMillan
contends the current standby fee assessment of approximately $80,000 per year is grossly
disproportionate to the fair market value of the property and should be declared unconstitutional.

 Standby fees are not levied upon all property within a political unit; they are
imposed only on property that can avail itself of benefits conferred by improvements to the unit. 
See Tex. Water Code Ann. § 49.231(a)(1) (West Supp. 1999); 30 Tex. Admin. Code § 293.141(a)
(1997). A charge of this nature has been held to be a local assessment and not an ad valorem tax. 
See Wharton County Drainage Dist. No. 1 v. Higbee, 149 S.W. 381, 385 (Tex. Civ.
App.--Galveston 1912, writ ref'd n.r.e.).

 Because standby fees are not equally distributed but instead are imposed only on
property that can take advantage of available benefits, they are not taxes and the constitutional
limitations of Article VIII do not apply. See Conlen Grain & Mercantile, Inc. v. Texas Grain
Sorghum Producers Bd., 519 S.W.2d 620, 622-23 (Tex. 1975); City of Wichita Falls v. Williams,
26 S.W.2d 910, 911-12 (Tex. 1930).

 McMillan's second constitutional argument is that the imposition of standby fees
on his property violates Article XVI, section 59 of the Texas Constitution. He contends that this
section requires the fee to "be based on benefits to the property assessed." As this is merely a
reiteration of McMillan's argument under point of error one, concerning allocation and availability
of capacity, our holding is the same.

 We overrule McMillan's third point of error. Having overruled all points of error,
we affirm the judgment of the trial court.



 

 John Powers, Justice

Before Chief Justice Aboussie, Justices Powers and B. A. Smith

Affirmed

Filed: December 29, 1998

Publish 

1. The District and KWT Properties intervened below and are appellees here.
2. "'Standby fee' means a charge, other than a tax, imposed on undeveloped property for the
availability of potable water, sanitary sewer, or drainage facilities and services." Tex. Water
Code Ann. § 49.231(a)(1) (West Supp. 1999); see also 30 Tex. Admin. Code § 293.141(a) (1997)
("'Standby fee' means a charge, other than a tax, imposed on undeveloped property for the
availability of water or wastewater facilities and services. Standby fee does not mean an impact
fee, tap fee, or a connection fee.").
3. "[T]he district shall submit to the commission an application for authority to adopt and
impose the standby fee. The application must describe the tracts of undeveloped property in the
district and state the amount of the proposed fee." Tex. Water Code Ann. § 49.231(c) (West
Supp. 1999).
4. "The commission may approve the adoption and imposition of the standby fee for a period
of not more than three years." Tex. Water Code Ann. § 49.231(h) (West Supp. 1999).
5. "A person affected by a ruling, order, decision, or other act of the commission may file a
petition to review, set aside, modify, or suspend the act of the commission." Tex. Water Code
Ann. § 5.351(a) (West 1988); see also Tex. Water Code Ann. § 5.354 (West 1988) ("A suit
instituted under Section 5.351 or 5.352 of this code must be brought in a district court in Travis
County.").
6. In the context of standby fees, "capacity" means the ability to serve undeveloped property
with sufficient "connections" to potable water, sanitary sewer, and drainage facilities. 
"Connection" is not defined in the statute, but "connection" is defined in the Texas Administrative
Code as


a standardized measure of consumption, use, generation, or discharge attributable to
an individual unit of development calculated in accordance with generally accepted
engineering, or planning standards. Connections shall be used to calculate the
standby fee. Connections may be described in terms of single family equivalent
connections . . . or any other generally accepted unit of consumption typically
attributable to a single family household.


30 Tex. Admin. Code § 293.143(a)(1) (1997).
7. For example, while being cross-examined before the ALJ, an engineer responsible for civil
engineering support of the District's records was asked why McMillan was being charged for
capacity in light of the engineer's testimony that "the facilities constructed with Bond Issue No.
1 and Bond Issue No. 2 were not capable of serving the connections projected to be served by
those two bond issues[.]" She responded, "The water plant and waste water plant have available
capacity. It is not adequate to serve those original projections, but there is capacity available to
service undeveloped property in the District." McMillan's counsel then asked, "So, we're no
longer concerned about the original projections? We're concerned with how the District stands
now in capacities available on a first-come, first-serve basis?" The engineer's affirmative
response to this question is representative of the way the District interprets the requirements of
the statute and the rule. 
8. We believe the word "available" is not, in context, susceptible of only one interpretation. 
That is to say, it is uncertain what the legislature intended the word to mean in the complex
circumstances in which the word is used. The word is therefore open to construction by the
Commission that must administer the statutory scheme. The agency's resulting interpretation is
entitled to serious consideration and weight as we consider the meaning proper to be assigned the
word "available" in context. See Calvert v. Kadane, 427 S.W.2d 605, 608 (Tex. 1968).
9. Hammonds v. Holmes, 559 S.W.2d 345, 346 (Tex. 1977) (quoting State of Okla. v. State
of Tex., 256 U.S. 70, 86 (1921)).


bility
of capacity, our holding is the same.

 We overrule McMillan's third point of error. Having overruled all points of error,
we affirm the judgment of the trial court.



 

 John Powers, Justice

Before Chief Justice Aboussie, Justices Powers and B. A. Smith

Affirmed

Filed: December 29, 1998

Publish 

1. The District and KWT Properties intervened below and are appellees here.
2. "'Standby fee' means a charge, other than a tax, imposed on undeveloped property for the
availability of potable water, sanitary sewer, or drainage facilities and services." Tex. Water
Code Ann. § 49.231(a)(1) (West Supp. 1999); see also 30 Tex. Admin. Code § 293.141(a) (1997)
("'Standby fee' means a charge, other than a tax, imposed on undeveloped property for the
availability of water or wastewater facilities and services. Standby fee does not mean an impact
fee, tap fee, or a connection fee.").
3. "[T]he district shall submit to the commission an application for authority to adopt and
impose the standby fee. The application must describe the tracts of undeveloped property in the
district and state the amount of the proposed fee." Tex. Water Code Ann. § 49.231(c) (West
Supp. 1999).
4. "The commission may approve the adoption and imposition of the standby fee for a period
of not more than three years." Tex. Water Code Ann. § 49.231(h) (West Supp. 1999).
5. "A person affected by a ruling, order, decision, or other act of the commission may file a
petition to review, set aside, modify, or suspend the act of the commission." Tex. Water Code
Ann. § 5.351(a) (West 1988); see also Tex. Water Code Ann. § 5.354 (West 1988) ("A suit
instituted under Section 5.351 or 5.352 of this code must be brought in a district court in Travis
County.").
6. In the context of standby fees, "capacity" means the ability to serve undeveloped property
with sufficient "connections" to potable water, sanitary sewer, and drainage facilities. 
"Connection" is not defined in the statute, but "connection" is defined in the Texas Administrative
Code as


a standardized measure of consumption, use, generation, or discharge attributable to
an individual unit of development calculated in accordance with generally accepted
engineering, or planning standards. Connections shall be used to calculate the
standby fee. Connections may be described in terms of single family equivalent
connections . . . or any other generally accepted unit of consumption typically
attributable to a single family household.


30 Tex. Admin. Code § 293.143(a)(1) (1997).
7. For example, while being cross-examined before the ALJ, an engineer responsible for civil
engineering support of the District's records was asked why McMillan was being charged for
capacity in light of the engineer's testimony that "the facilities constructed with Bond Issue No.
1 and Bond Issue No. 2 were not capable of serving the connections projected to be served by
those two bond issues[.]" She responded, "The water plant and waste water plant have available
capacity. It is not adequate to serve those original projections, but there is capacity available to
service undeveloped property in the District." McMillan's counsel then asked, "So, we're no
longer concern