TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00002-CV






WBD Oil & Gas Company and WBD Oil & Gas Company, Inc., Appellants



v.



Railroad Commission of Texas; Dan Morales in his Official Capacity as Attorney


General of the State of Texas; Anadarko Petroleum Corp.; MidCon Gas


Services Corp.; Natural Gas Pipeline Company of America; Midgard


Energy Company; and Conoco Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 95-07116, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING 








DISSENTING OPINION





 I respectfully dissent for the reasons that follow:


A "RULE" IS THE PRODUCT OF RULEMAKING


 Section 2001.038 of the Administrative Procedure Act (APA) (1) authorizes a cause
of action for declaratory judgment to determine the validity or applicability of an agency "rule." 
Section 2001.003(6) of the APA defines "rule" as "a state agency statement of general
applicability . . . that implements, interprets, or prescribes law or policy." The Panhandle Field
rules, in common usage, easily satisfy this statutory measure. The majority therefore conclude
the Panhandle Field rules constitute an actual "rule" within section 2001.038 and the district court
possessed subject-matter jurisdiction.

 The foregoing rationale rests upon a silent assumption that any agency statement
that fits in common usage the language in section 2001.003(6) is, without more, an actual rule and
legally binding as such. I disagree.

 The definition of "rule" in section 2001.03(6) is taken almost verbatim from section 
(1)(7) of the 1961 Model State Administrative Procedure Act (2) promulgated by the National
Conference of Commissioners on Uniform State Laws. The Commissioners' purpose in so
defining the word "rule" was the very opposite of the majority's assumption. The
Commissioners' purpose was to define various forms of agency statements that are not legally
effective as rules unless and until those statements are duly adopted by the agency in a rulemaking
proceeding governed by sections one through six of the model act (sections 2001.021-.037 of the
APA). In the Commissioners' view, this was necessary


to defeat the inclination shown by some agencies to label as "bulletins,"
"announcements," "guides," "interpretative bulletins," and the like,
announcements which in legal operation and effect, really amount to rules; and then
to assert that their promulgations are not technically rules but merely policy
statements, and hence may be issued without observance of the procedures required
in connection with the adoption of rules.


1 Frank E. Cooper, State Administrative Law at 108 (1965) (emphasis added). "A 'rule,'
therefore, is the product of rule making--the agency process resembling the action of a legislature
enacting a typical statute." Arthur Earl Bonfield, State Administrative Rule Making, § 3.3.1, at
76 (1986). (3)

 The definition of the word "rule" in section 2001.003(6) does not exist in a
vacuum. The definition in that section and the use of the word "rule" in section 2001.038
(authorizing a declaratory-judgment action directed at an agency "rule") have a specific
context--the APA. The structure of the APA--the physical and logical relation between its several
parts--demonstrates unequivocally the legislature's intention that the word "rule" shall mean the
product of an agency rulemaking proceeding--the generally accepted meaning of the word "rule." 

 The APA consists of two basic divisions. Sections 2001.051 through 2001.147
govern contested-case proceedings in agencies subject to the APA. Sections 2001.021 through
2001.037 govern rulemaking in those agencies; and section 2001.038 authorizes a
declaratory-judgment action for the judicial review of agency rules.

 There can be no doubt that the word "rule" was intended to have the same meaning
throughout all sections of the APA. That is why the legislature began section 2001.003 (wherein
the word "rule" is defined) with the expression "In this chapter." Between section 2001.003(6)
(defining the word "rule") and section 2001.038 (authorizing the declaratory-judgment action),
the word "rule" occurs seventy-seven times in the various provisions that govern rulemaking in
the agencies. It is not to be supposed, therefore, that the word "rule" can mean one thing in
sections 2001.003(6) and 2001.038 and a vastly different thing in sections 2001.021-.037 that
govern rulemaking. For example, the adoption of an agency "rule" must be preceded by a notice
with particular contents (section 2001.023), a local-employment impact statement (section
2001.022), and an opportunity for public comment (section 2001.029). The agency order finally
adopting a "rule" must contain specified agency determinations (section 2001.033), and a "rule"
is not effective until the agency has indexed the "rule" and made it available for public inspection
(section 2001.005). Finally, an agency "rule" is not valid as a rule unless adopted in substantial
compliance with the foregoing provisions (section 2001.035). If the word "rule" connotes these 
attributes when used in sections 2001.021-.037, then the word "rule" must also connote those
same attributes as the word is used in section 2001.038 authorizing a declaratory-judgment action. 
Otherwise, the word "rule" means different things in the several parts of the APA, contrary to the
legislature's declared intention that the word "rule" shall mean the same thing throughout the
APA.

 Stated another way, it is obvious that the legislature intended the word "rule" to
have a specific, technical meaning as it is used in the APA--the product of a rulemaking
proceeding conducted under sections 2001.021-.037. When the legislature so declares the
meaning of a word, courts are bound accordingly regardless of the meaning of the word in
common usage or in other connections and contexts. See Transport Ins. Co. v. Faircloth, 898
S.W.2d 269, 273-74 (Tex. 1995); Eppstein v. State, 143 S.W. 144, 146 (Tex. 1912). The
majority therefore err, in my view, in the meaning they assign to the statutory definition of "rule"
in section 2001.003(6).


THE CONSEQUENCES OF THE MAJORITY DECISION WILL BE VEXATIOUS


 The Panhandle Field rules were not promulgated in a Commission rulemaking
proceeding, but in a contested-case proceeding in which the agency decided issues of fact and law
based upon evidence adduced, employing trial-type procedures in a controversy involving
particular parties. See APA §§ 2001.051-.057. Field rules cannot be promulgated in any other
way. They are simply adjudicated exceptions from the standard spacing requirements of the
Commission's famous "statewide rule" 37. The exceptions are granted based upon evidence from
which the Commission concludes that the particular features of the field require an exception to
Rule 37 to prevent waste or an unconstitutional confiscation of private property. Trial-type or
"contested case" procedures are essential for the Commission to assure that the discrimination
resulting from the field rules has a reasonable basis in fact and is therefore constitutionally
permissible. Railroad Comm'n v. Shell Oil Co., 161 S.W.2d 1022, 1026-27 (Tex. 1942). This
assurance cannot be secured by informal or notice-and-comment rulemaking--the procedures the
majority would fasten upon the Commission in its adoption of field rules. (4) Under notice-and-comment rulemaking pursuant to sections 2001.021-.037, those affected by the field rules would
be deprived of property without due process of law because they would be denied the right to
present evidence and argument as to the particulars of the field and their circumstances, the right
to rebut adverse evidence through cross-examination and other appropriate means, the right to
have the decision based upon evidence introduced into the record of the hearing, the right to a
complete record containing a transcript of the testimony and arguments and the documentary
evidence and all papers filed in the proceeding, and the right to know the bases of the agency
decision as reflected in findings of fact and conclusions of law. See Bernard Schwartz,
Administrative Law, § 5.1, at 203-04 (1984).

 And one should think the legislature could not possibly have intended the absurd
and paralyzing consequences that will result from the majority decision. The majority decision
means that every Commission statement, if it arguably fits in common usage the definition of a
"rule" in section 2001.003(6), is subject to a declaratory-judgment action under section 2001.038. 
For example, the Commission has historically and efficiently made extensive use of its statutory
power of unilateral investigation to determine any number of things relative to the lawful drilling,
completion, operation, and plugging of wells. See Kenneth Culp Davis and York Y. Wilbern,
Administrative Control of Oil Production in Texas, 22 Tex. L. Rev. 149, 158-59 (1944). Under
the majority decision, the Commission's simple letter to its district engineers, directing them as
a matter of law and policy to verify some aspect of wells located in their districts, will constitute
a "rule" and be subject to judicial review under section 2001.038. In addition, some fields have
only a single well and a single owner. It is doubtful the legislature intended that the Commission
must employ the unnecessary and expensive procedure of notice-and-comment rulemaking in such
cases. And any brief filed in this or another court by the Commission, setting forth the agency's
interpretation of an oil-and-gas statute, amounts to a statement of the Commission's view of "law"
and "policy." Thus the brief itself promulgates a "rule" under the majority decision--a rule that
is subject to judicial review, in the abstract, under section 2001.038, before the Commission may
urge the point in court in a particular case with concrete facts.

 Consequently, the Commission is compelled to adopt rules before the agency may
act at all in most areas of its administration. The agency is thus deprived of the flexibility and
discretion we have repeatedly said administrative agencies have, because they must have it, when
they exercise both rulemaking and contested-case powers--a choice to make law and policy in the
course of deciding contested cases or through rulemaking, within the limits of the abuse-of-discretion norm. See, e.g., El Paso v. Public Util. Comm'n, 883 S.W.2d 179, 188-89 (Tex.
1994). Whether the Commission has abused its discretion in the present case, by the choice it
made, is not before us. Cf., Madden v. Texas Bd. of Chiropractic Exam'rs, 663 S.W.2d 622
(Tex. App.--Austin 1983, writ ref'd n.r.e.).

 The ill consequences of the majority decision will affect by analogy other regulatory
agencies subject to the APA. Public utilities, for example, if they wish to increase their rates for
electric or telecommunications services, must presently do so by initiating a contested-case
proceeding. See Tex. Util. Code Ann. §§ 14.052-.057, 15.001, 36.105, 53.111 (West 1998). 
The fixing of utility rates in this manner is, of course, a "legislative" function under the majority's
usage and a public utility's customers are a "class by description" in the majority's words. Under
their rationale, the resulting rate order is actually a "rule" in legal effect because it necessarily
implements and interprets the various statutory criteria that govern utility ratemaking.

 Which manner and scope of judicial review shall we then apply in such a case? 
Presently, judicial review of such rate orders is limited to questions of law and directed at the
agency record with the deference required by the substantial-evidence rule. See APA
§§ 2001.171-.1775. On the other hand, in a suit for declaratory judgment under section 2001.038,
as mandated by the majority decision, any record of agency proceedings is immaterial and the
plaintiff may proceed originally in district court on any allegations of fact and law by which he
contends the final order in the contested case is invalid or inapplicable--perhaps the most obvious
claim being that the "rule" is invalid for want of substantial compliance with the rulemaking
provisions of the APA. The examples are easily multiplied. (5) I do not believe the legislature
intended such confusion and absolute contradiction.

 I should refer briefly to "the legislative/judicial distinction" urged by the majority. 
That distinction is based on the word "adjudicative" found in the APA definition of "contested
case." The term "contested case" is defined to mean "a proceeding . . . in which the legal rights,
duties, or privileges of a party are to be determined by a state agency after an opportunity for
adjudicative hearing." APA § 2001.003(1) (emphasis added). The majority conclude that the
Panhandle Field rules are not the product of a contested case because they are "legislative" in
nature, rather than "adjudicative" as the foregoing definition requires. I disagree with this course
of reasoning.

 The 1961 Model Act provision from which the definition of "contested case" is
taken does not include the adjective "adjudicative." The reason the Texas legislature added the
adjective is not complicated; the word was not intended to have substantive consequences. The
word "adjudicative"


was added simply to counter the criticism that the Model Act's definition failed to
distinguish sharply between the "hearing" required in a contested case and the
"public hearing" required in rulemaking proceedings. . . . Ostensibly, the word
"hearing" could apply to either type of proceeding. The Texas draftsmen added
the word "adjudicative" to emphasize that a rulemaking proceeding did not become
a contested case simply by virtue of the "public hearing" requirement.



Robert W. Hamilton and J. J. Jewett, III, The Administrative Procedure and Texas Register Act: 
Contested Cases and Judicial Review, 54 Tex. L. Rev. 285, 287 (1976) (emphasis added). The
"Texas draftsmen" could not possibly have foreseen that the word "adjudicative" would be
employed to the opposite substantive effect--to convert a contested-case proceeding into a
rulemaking proceeding as the majority have done.

 While the distinction between legislative and judicial functions is occasionally
useful, the distinction is meaningless in the present context. Administrative agencies perform
administrative functions exercising administrative powers delegated to them by the legislature. 
It is only by analogy that we refer to the agencies' functions as "legislative" or "adjudicative." 
See Missouri, K. & T. Ry. Co. of Texas v. Shannon, 110 S.W. 138, 141 (Tex. 1907); American
Surety Co. v. Mays, 157 S.W.2d 444 (Tex. Civ. App.--Waco 1942, writ ref'd w.o.m.). The
agency proceeding that produced the Panhandle Field rules is what the constitution and statutes
required it to be, what the Commission intended it to be, and what the record shows it to be--a
contested-case proceeding conducted under the applicable provisions of the APA. A proceeding
of that kind cannot produce an agency "rule" as that word is used in section 2001.038 of the APA.

 I would hold the district court did not have jurisdiction under section 2001.038.



 

 John Powers, Justice

Before Justices Jones, Kidd and Powers*

Filed: February 4, 1999

Publish



* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The Administrative Procedure Act is found in sections 2001.001-.902 of the Texas
Government Code. See Tex. Gov't Code Ann. §§ 2001.001-.902 (West 1998). Section numbers
in the text of the opinion refer to sections of the APA and the Code.
2. The 1961 Model State Administrative Procedure Act is found in 15 Uniform Laws Annotated
147-554 (1990).
3. Davis states the matter succinctly in his textbook. The "core of meaning" of the word rule
"is generally understood and may be simply described. A rule . . . is the product of rulemaking,
and rulemaking is the part of the administrative process that resembles a legislature's enactment
of a statute." Kenneth Culp Davis, Administrative Law Text, § 5.01, at 123 (1972).


 One must guard against imputing to state rules and rulemaking, under statutes derived from
the 1961 Model Act, the distinctions that emanate from the federal administrative procedure act. 
The federal distinctions are based on different definitions of "rule" and "rulemaking." For
example, a "rule" under the federal definition means an "agency statement of general or particular
applicability." 5 U.S.C. § 551(4) (1976) (emphasis added). The basic principle remains the same
even under this statutory definition and related statutes. While rules may take many forms,
legislative rules with a few statutory exceptions "can be promulgated only through use of" the
rulemaking procedures in 5 U.S.C. section 553. 1 Kenneth Culp Davis and Richard J. Pierce, Jr.,
Administrative Law Treatise, § 6.1, at 225 (1994) (emphasis added).
4. The notice-and-comment rulemaking prescribed by the APA should not be confused with
rulemaking based upon an official rulemaking record.
5. See, e.g., City of Lancaster v. Texas Nat. Res. Cons. Comm'n, 935 S.W.2d 226 (Tex.
App.--Austin 1996, writ denied) (solid-waste permit amendment); Nueces Canyon Cons. I.S.D.
v. Central Ed. Agency, 917 S.W.2d 773 (Tex. 1966) (detachment and annexation of school-district
territory); Texas Rivers Protection Ass'n v. Texas Nat. Res. Comm'n, 910 S.W.2d 147 (Tex.
App.--Austin 1995, writ denied) (water-diversion permit); City of Amarillo v. Railroad Comm'n,
894 S.W.2d 491 (Tex. App.--Austin 1995, writ denied) (natural gas rates); Texas Water Comm'n
v. Lakeshore Utility, 877 S.W.2d 814 (Tex. App.--Austin 1994, writ denied) (water and sewer
rates); Smith v. Houston Chem. Services, Inc., 872 S.W.2d 252 (Tex. App.--Austin 1994, writ
denied) (issuance of solid-waste permit).



milton and J. J. Jewett, III, The Administrative Procedure and Texas Register Act: 
Contested Cases and Judicial Review, 54 Tex. L. Rev. 285, 287 (1976) (emphasis added). The
"Texas draftsmen" could not possibly have foreseen that the word "adjudicative" would be
employed to the opposite substantive effect--to convert a contested-case proceeding into a
rulemaking proceeding as the majority have done.

 While the distinction between legislative and judicial functions is occasionally
useful, the distinction is meaningless in the present context. Administrative agencies perform
administrative functions exercising administrative powers delegated to them by the legislature. 
It is only by analogy that we refer to the agencies' functions as "legislative" or "adjudicative." 
See Missouri, K. & T. Ry. Co. of Texas v. Shannon, 110 S.W. 138, 141 (Tex. 1907); American
Surety Co. v. Mays, 157 S.W.2d 444 (Tex. Civ. App.--Waco 1942, writ ref'd w.o.m.). The
agency proceeding that produced the Panhandle Field rules is what the constitution and statutes
required it to be, what the Commission intended it to be, and what the record shows it to be--a
contested-case proceeding conducted under the applicable provisions of the APA. A proceeding
of that kind cannot produce an agency "rule" as that word is used in section 2001.038 of the APA.

 I would hold the district court did not have jurisdiction under section 2001.038.



 

 John Powers, Justice

Before Justices Jones, Kidd and Powers*

Filed: February 4, 1999

Publish



* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The Administrative Procedure Act is found in sections 2001.001-.902 of the Texas
Government Code. See Tex. Gov't Code Ann. §§ 2001.001-.902 (West 1998). Section numbers
in the text of the opinion refer to sections of the APA and the Code.
2. The 1961 Model State Administrative Procedure Act is found in 15 Uniform Laws Annotated
147-554 (1990).
3. Davis states the matter succinctly in his textbook. The "core of meaning" of the word rule
"is generally understood and may be simply described. A rule . . . is the product of rulemaking,
and rulemaking is the part of the administrative process that resembles a legislature's enactment
of a statute." Kenneth Culp Davis, Administrative Law Text, § 5.01, at 123 (1972).


 One must guard against imputing to state rules and rulemaking, under statutes derived from
the 1961 Model Act, the distinctions that emanate from the federal administrative procedure act. 
The federal distinctions are based on different definitions of "rule" and "rulemaking." For
example, a "rule" under the federal definition means an "agency statement o